A. AKIN, SR., V. GEO. C. JEFFERSON ET AL.

(Case No. 1733,

1. VERDICT—JUDGMENT—VARIANCE—INTEREST.—In rendering judgment upon facts found by the jury, the court cannot add a fact not included in the verdict, as interest on the sum found, where interest did not follow as an incident, even though the uncontradicted testimony showed the fact so found by the court.

2. SAME.—The verdict must constitute the basis of the judgment, and the court must look to it alone. The judgment is the conclusion of law upon the facts of the case as found by the verdict. (Claiborne v. Tanner, 18 Tex., 68.)

3. SAME.—Interest is not such a legal incident to a sum, found by a jury to be due plaintiff from defendant as the proceeds of a crop, that the court can add it to the principal in its judgment, without a finding of the jury.

4. COMMUNITY PROPERTY—SURVIVOR—USE.—In some cases a survivor may be liable for the use of stock belonging to the community estate, but when it is not averred that he improperly cared for or overworked the animals in any way, or that he hired them out, or should have hired them out or sold them, or that plaintiffs (the other heirs) demanded a division of the stock, the survivor is not liable.

5. SAME.—If there are no debts, it is the survivor's duty to take care of the community stock for the owners, and while doing this, if he makes only such use of them as would not damage their value, he is not liable for the value of their hire. A reasonable use is an incident of his possession as owner in common.

6. SAME—SUIT.—After the institution of a suit by the other heirs, claiming the value of the animals' use, and demanding partition, the survivor thenceforth becomes liable for the value of their hire.

7. COMMUNITY—EXEMPTION—DISTRIBUTION.—Pas. Dig. of Laws of Tex., art. 5487, does not prevent exempt property from being finally distributed, or being taken into account under the law of descent and distribution.

8. COMMUNITY—SURVIVOR—TENANTS' RENTS AND PROFITS IN COMMON—AUTHORITIES REVIEWED.—A wife died and the husband occupied the community lands. The wife's children sued him for their part of the rents with interest. *Held:*

(1) That plaintiffs and defendant became tenants in common on the death of the wife, and if he occupied all the land, without excluding his co-tenants, they could not at common law compel him to account for the profits; unless he was made their bailiff, he could not be made to account, even where he let the premises and received the entire rents.

(2) Statutes of 4 and 5 Anne, gave the right to an account only when the land held in common was let, and one of the co-tenants received more than his share of the rents. (Neil v. Shackelford, 45 Tex., approved.)

(3) In this state, independent of the Statute of Anne, if a tenant in common lets the entire estate, he may be held to account to his co-owners for the rent, but if he occupies the lands himself, and by his own labor, and at his own expense, causes them to produce a profit, his co-tenant, not in possession, nor sharing the toil or risk, cannot claim part of the profits.

(4) A surviving partner has the right of exclusive possession, and the duty of using the partnership property in discharging debts is imposed upon him; if he exercises the right, he assumes the duties of a trustee, and must account for rents and profits.

(5) If ch. 28, R. S. is followed, the surviving wife or husband becomes a trustee; if he or she does not assume that character by a compliance with the statute, creditors or heirs of the wife may open administration, or the wife's heirs may share the occupancy of the lands or sue for partition.

(6) If the surviving husband refused to act as trustee, and did no act to prevent plaintiffs from exercising all the privileges of tenants in common, occupying the lands by their acquiescence, then he did not act as their trustee or agent, but as their co-tenant, and incurred no obligation to account to them for rents and profits.

9. SEPARATE PROPERTY—COMMUNITY—PURCHASE MONEY.—Land was bought and paid for by a man before his marriage; after marriage he compromised a suit against him for the land by paying half its value, the compromise money being community property. *Held:*

(1) If the husband acquired a good title by the first purchase, or by limitation before his marriage, all the land was his separate property.

(2) If he did not have a title at the time of his marriage, it was all community property.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty. The opinion states the case.

*Alex. Pope,* for appellant, on the question of interest, cited: R. S., arts, 1330, 1333, 1335; Tinnen v. Matthews, Dallam, 491; Paschal v. Acklin, 24 Tex., 191; Claiborne v. Tanner, 18 Tex., 74.

On exemption, he cited: Pas. Dig. Law, Tex., arts. 6839, 5487; W. & W. Cond. Rep., secs. 513, 951; Kessler v. Draub, 52 Tex., 579, 580; J. M. Alexander v. Alex. Holt, 59 Tex., 206; Tex. Law Rev., vol. 4, p. 88; Green v. Raymond, 58 Tex., 80; Tex. Law Rev., vol. 4, pp. 139, 141; Freeman on Ex., secs. 233, 208; Montague v. Richardson, 34 Conn., 346; Allman v. Gann, 29 Ala., 240; Favers v. Glass, 22 Ala., 621; Sallee v. Waters, 17 Ala., 482; Gilman v. Williams, 7 Wis., 287; Connaughton v. Sands, 32 Wis., 387; Kuntz v. Kinney, 33 Wis., 510; Carrington v. Herrin, 4 Bush., 624; 45 Am. Dec., 252, 253; Robert v. Adams, 38 Cal., 383.

As to the use of the stock, he cited: Clavit v. Cloud, 14 Tex., 53, 55; Lumpkin v. Murrell, 46 Tex., 57, 62; Pressley heirs v. Robinson,

57 Tex., 457-460; Putnam *v.* Young, 57 Tex., 464; W. & W. Cond. Rep., secs. 1036, 1116; 14 Am. Dec., 586, 587; Freeman on Co-Ten. and Part., secs. 273, 276, 269; Pico *v.* Columbet, 12 Cal., 419; 5 Bat. Ab., 361.

On the rent of the lands, he cited : Lumpkin *v.* Murrell, 46 Tex., 57, 62; Pressley heirs *v.* Robinson, 57 Tex., 457-460; Putnam *v.* Young, 57 Tex., 464; W. & W. Cond. Rep., secs. 1036, 1116.

On the community character of the land, he cited: R. S. art., 2851; Medlanka *v.* Downing, 59 Tex., 32-38.

*James Turner* and *Jno. T. Pierce,* for appellees.

ROBERTSON, ASSOCIATE JUSTICE.—Anna Akin, prior to her marriage with the appellant in 1857, was a widow and the mother of five children, who were the plaintiffs below, and are the appellees in this court.   One child, A. Akin, Jr., was the issue of her marriage with appellant.   This child and appellant were defendants in the court below, and A. Akin, Jr., having died pending the suit, his wife and three minor children were made parties defendant in his stead.   In 1874, Anna Akin died, and the estate acquired by her and appellant during their marriage continued after her death in the management and control of appellant.   This suit was commenced on September 17, 1879, and by it the plaintiffs sought an account of appellant's management of the community estate of him and their mother, a partition of the community lands, and such decree as the equities of the case might require.

In their amended original petition, on May 29, 1882, the plaintiffs charge that the defendant, without qualifying as survivor, under the statute, retained possession and control of the community property for the purpose of paying community debts; that he gathered, marketed, and kept and used the proceeds of the crop of 1874, which had matured defore the death of their mother, and that during the succeeding years, including the year 1882, he used the community work-stock and farming implements, and cultivated the community lands.   In the same pleading the lands and personalty comprising the community estate of appellant and their mother are set forth at great length and in considerable detail.   They also allege that all the community debts have been paid, and ask for partition of the lands, for rents, for hire of work-stock, for an account for interest on monies due, and for a general decree dividing and distributing the community estate.

On May 29, 1882, the appellant filed his third amended original answer, in which he pleaded the general issue, stated what the

community property consisted of, what debts, taxes and charges he had paid, what improvement he had made, and various other matters pertinently responsive to the plaintiffs' suit, and his co-defendants adopted his pleadings. On November 2, 1882, the plaintiffs filed a supplemental petition, and on these pleadings, on November 14, 1883, the cause was tried. On the trial the court below submitted to the jury thirty-five special issues, and upon each of them the jury, after deliberating upon them from November 14, 1883, to January 4, 1884, returned responsive findings in due form. Upon these findings the court below rendered a judgment for the plaintiffs for $1,666.56, and for partition of the lands and personal property still on hand, and for costs. The appellant moved for a new trial, and also to reform the judgment, and both motions were overruled. He alone appeals, and seeks in this court to have the judgment of the court below reversed and reformed or rendered. No statement of facts was made. Neither party complains here of the charge of the court below in submitting special issues, or of the failure to submit any, nor of the findings of the jury upon the issues submitted. But the appellant complains that the judgment does not properly apply the law to the pleadings and facts found by the jury.

In answer to the fifth special issue submitted, the jury found that the cotton crop of 1874 brought $8,332. In submitting this issue the court did not direct the jury to calculate interest on this sum from the date it was realized until the date of the trial, and no interest was found by the jury. In the judgment rendered, the appellant was charged with all sums of money received by him on account of the community, and he was then credited with all sums paid out by him on account of the community, and the plaintiffs were given a judgment for five-twelfths of the difference. In estimating the sums with which the appellant was credited, the jury was instructed to allow him interest from the time the credits accrued, and this was done. On all the charges against appellant, except this sum arising from the crop of 1874, the interest from the date of accrual was by instruction of the court found by the jury. In making the estimate of appellant's indebtedness to the community estate the court supplemented the finding under the fifth issue by the addition of $5,686.86 interest.

The appellant's first assignment of error complains of this addition to the finding in the judgment rendered. No agreement of counsel is found in the record to take the place of a finding by the jury as to this item of interest. If it was proper under the facts for the appellant to be charged with interest on the value of the cotton crop of 1874, the interest should have been embraced in the finding.

It is probable that the failure to instruct the jury to find interest was inadvertent, but can the court in rendering judgment upon the facts found by the jury add a fact not found, even though the uncontradicted testimony showed the fact so found by the court? "There can be no clearer principle than that where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The court cannot look to the evidence on which the verdict was found in order to determine what judgment to render, but must look alone to the verdict; for it is upon that which the jury have found, not what they might or ought to have found, that the court proceeds to render judgment. The judgment is the conclusion of law upon the facts of the case as found by the verdict of the jury." Claiborne v. Tanner, 18 Tex., 78.

This language was used in a case in which special findings were made, and the judgment rendered affirmed facts not found by the jury. In the case of Fisk v. Holden, 17 Tex., 408, the jury found for the plaintiff, "the amount of the note, $100," and judgment was rendered for $105.66. The court say: "The jury having found for plaintiff the principal sum specified in the note, interest followed as an incident, and was rightly included in the judgment." The addition of the interest to the finding was part of the application of the law to the verdict. But interest is not a legal incident to the sum found as proceeds of the crop of 1874. When the interest should commence would depend upon facts not found, and whether it should be charged at all might depend upon several contingencies. In the theory of the case presented by the court below, interest ought very probably to have been embraced in the fifth finding, but as it was not, in the absence of any agreement of the parties supplying the omission, the judgment could only proceed upon the actual findings.

In making the estimate of appellant's indebtedness to the community estate, he was charged with the sum of $3,671.20 as the value of the use of the mules and horses belonging to the community estate. We are not prepared to hold that this would not be a proper charge against the survivor in some cases, and if any such case is averred in the plaintiff's pleadings, in the absence of a statement of facts, it would be presumed in support of the verdict and judgment that such case was proved.

The plaintiffs do not charge that the horses and mules were improperly cared for, nor that they were overworked or improperly handled in any way. It is simply charged that they were used. They were on hand at the date of Mrs. Akin's death, and if there were no debts, it was appellant's duty to take care of them for the

owners, and while doing this, if he made only such use of them as would not damage their value, he would not be liable for the value of the hire-of them. It is not averred that he did hire them out, nor that it was his duty to hire them out, or that he could have done so, nor that he should have sold them. It is not averred that the plaintiffs ever, until the filing of the suit, demanded a division of the stock. The whole charge in the petition in this particular amounts to an allegation that he did not, of his own motion, tender to the plaintiffs their part of the horses and mules. He was an equal owner with plaintiffs, and had possession, and there is no principle of law or equity that would charge him as the hirer of the plaintiffs' interest. If the use was reasonable, it was an incident of the possession, which was not claimed to be wrongful. It appears, however, from the verdict that $1,217 of this charge was the value of the hire of the stock after the suit was brought and after the plaintiffs therein had not only demanded partition, but had also notified the appellant by their demand in the suit of the only terms upon which they assented to his holding possession. He should therefore be charged with the $1,217, but not with the balance of the $3,671.20. To this extent the third assignment of error is sustained. Freeman on Co-Ten. and Part., sec. 245.

The second assignment of error complains of the ruling of the court in charging appellant with the value of corn on hand not needed by appellant for his family and exempt stock. Whether, under the exemption act then in force, all the corn needed for home consumption was exempt, or only enough to supply the family and exempt stock, need not now be decided, as, if it all was exempt as claimed by appellant, there is nothing in the act which withdraws the exemptions from administration to prevent them from being finally distributed or being taken into account under the law of descent and distribution. The appellant ought therefore to have been charged in the judgment with the value of all the corn, cotton seed, etc., on hand.

The fourth assignment of error complains of the action of the court in charging appellant with the sum of $916.06 as rents of the community lands and interest on same for the years succeeding the death of Mrs. Akin to the date of the trial. Upon the death of Mrs. Akin the title to her half of the community lands vested in her children, the plaintiffs, and A. Akin, Jr,, and they and appellant became tenants in common. At common law each had the right concurrently with the others to the use and occupancy of the whole, and if one, without excluding the other co-tenants, occupied and used the whole, he could neither be required by the others to account for the profits nor require

them to share with him the losses of the venture; and unless he was made their bailiff he could not be made to account even where he let the premises and received the entire rents. Freeman on Co-Ten. and Part., sec. 269. The statute of 4 and 5 Anne., ch. 16, under the construction placed upon its provisions by the courts of England and of several states of the Union, which have substantially re-enacted it, gave the right to an account only when the land held in common was let and one of the co-tenants received more than his just share of the rent money. In other states the account authorized by the statute has been extended to the profits of use and occupancy by one of the tenants in common. Id., secs, 270 et seq.

In the case of Neil v. Shackelford, 45 Tex., 119, appellant's counsel assumed that this statute was not in force in Texas, but argued that on principles of equity the tenant in possession was bound to account to his co-tenant for profits arising from his use of the common estate; but this court approved as the law properly disposing of the case of the charge given by the court below, that the tenant in possession was not bound to his co-tenant for rent until after demand by the latter for the right of concurrent occupancy, nor to account for profits in the absence of an express agreement. If to the view of the law expressed in that charge we were not committed by that decision we would move independently to the same doctrine. If one tenant in common lets the entire estate in common and receives the rent money, he may be required to account to his co-owner; but if he occupies the land himself, and by his own labor and management, and at his own expense, causes them to produce to him a profit, whether the statute of 4 and 5 Anne is in force in Texas or not, the tenant not in possession nor demanding to be admitted, not incurring any risk nor sharing any toil or outlay, must continue his abstinence at the harvest. He can neither share the fruits of his fellow's industry, nor become his landlord without a contract creating that relation between them. The plaintiffs allege that appellant, after the death of his wife, continued to use and enjoy the community lands. They do not charge that he let them and received the rents, or that they ever demanded, or he ever refused them the right to occupy any portion of the lands. The plaintiffs in their pleadings made no case upon which a tenant in common in possession could be made to pay them rents.

The appellant has briefed the case only upon the liability of tenants in common to account for rents and profits. In response the appellee cites no authority, but proposes the principle that appellant is liable to the charge of rents as made in the judgment, because he was "the survivor of the community," and retained possession of, used and

enjoyed the community lands. It is generally held that the survivor of a business partnership succeeds to the legal title to the firm personalty, and independently of the character of his title, that he has the right to the possession of the partnership assets, both real and personal, for the purpose of winding up the affairs of the partnership and paying the partnership debts. As long as he pursues this purpose with diligence and in good faith, neither the heirs nor legal representatives of the deceased partner can interfere with his management or disturb his possession of the common property. If upon the death of one of the partners the legal title to his interest in the partnership properly descends to and vests in his heirs, their title is still subject to the right of possession, control and disposition remaining with the survivor. The *right* of possession and the *duty* of using the common property in discharging the debts constitute the survivor a trustee. If he makes a profit from the use of the trust estate, he is required to account for it as any other trustee. The duty of using profitably the partnership realty, if it be in a condition to yield a revenue, arises from the right of exclusive possession. If he exercises the right he cannot escape the incidental duty, and hence must account for the rents or profits. These principles of the law of ordinary partnerships are elementary (Collyer, 533-4; 1 Lindley, 664, et seq.), and unless there is something peculiar about connubial partnerships, they would be decisive of the question now under consideration. As already seen the survivor is made accountable for rents because he is trustee, and this character arises mainly from his right to the exclusive possession of the community property until he may with diligence apply so much of it as may be required to the discharge of the partnership debts.

Has the community survivor any such right against the heirs of the deceased wife? Upon the death of their mother the plaintiffs in this suit were immediately invested by inheritance with the legal title to five-twelfths of all the community property of appellant and Mrs. Akin. If on the next day they had brought suit for partition, the appellant, it is believed, could not have prevented a decree in their favor on the averment and proof of community debts. In their hands, as well as his, the part that should be allotted to them from the common property would be still charged in equity with its portion of the common debt, and if from their insolvency or other cause there was danger that the property in their possession would escape its proper burden, a court having equitable powers could require an account, and in its decree protect the rights of creditors and the survivor. That such have been the rights of the parties since the community

act of August 16, 1856, which with slight changes, have been continued in force ever since, that act affords to our minds convincing proof, as it provides that the survivor may acquire and exercise the rights and powers of management, control and disposition of community property by taking certain steps prescribed by the act.

The statute would be an useless enactment if the survivor, in the view of the legislature, already possessed the rights and powers conferred by it only upon the prescribed terms. Without any terms the survivor of an ordinary partnership had substantially the same rights and powers thus conditionally put within the reach of the community survivor. If the statute is followed, the survivor becomes a trustee; if he does not thus assume this character, creditors or the heirs of the wife may open administration as in other cases (Pasch. Dig., art. 4649), or as the survivor has failed to acquire the right of exclusive possession in the manner authorized by statute the wife's heirs may share the occupancy of the lands, or immediately sue for partition. Refusing to assume the responsibility of trustee, and failing to do any act to prevent the plaintiffs from exercising all the privileges of other tenants in common, the appellant, in occupying the common lands by acquiescence of appellees, acted not as their trustee or agent, but only as their co-tenant. In this character by his occupancy he incurred no obligation to account to the appellees for rents and profits, and the judgment of the court below charging him with the rents of the community lands for the years succeeding the death of Mrs. Akin was improper. From the commencement of this suit he would properly be required to account for the rents, but the special findings do not distinguish the amount accumulated before and after suit.

The appellant in his answer claimed that the Jno. Chisum six hundred and forty-six acre tract of land was his separate property. The court in the decree directed that two hundred acres of this tract be set apart to the appellant for a homestead; that the remainder be divided into two equal parts, and that plaintiffs recover one-half of one of these parts. The only facts upon which this result was reached were that the defendant had purchased the land before he married Mrs. Akin, and after his marriage he compromised a suit brought against him for the land by paying half the value of the land. The purchase money was his separate means; the compromise money was community property. We cannot perceive how the compromise could make any part of the land community property, if by the original purchase appellant got a good title. On the other hand, if he got no title by the first purchase and acquired none by limita-

tion before his marriage, we cannot discern how it was not all community property. The facts upon which it could properly be determined whether this tract was community or separate property, it seems, were not before the court, and as the burden was on the plaintiffs to show that it was community property, this part of the judgment is not sustained by the evidence presented. Still as it is not perfectly clear from the record that other facts were not before the court the judgment in this respect would not on this account alone be disturbed.

The errors indicated require the reversal of the judgment, and as the findings do not afford us a sufficient basis for a decree fairly ending the litigation, the judgment will be reversed and the cause remanded. It is so ordered.

                                                REVERSED AND REMANDED.

[Opinion delivered November 6, 1885.]

Chief Justice Willie did not sit in this case.