## L. C. EASTHAM ET AL. v. J. A. SIMS ET AL.

### No. 904.

**1. Community Property—Sale by Survivor to Pay Community Debts.**

A sale of community property by the survivor in community cannot be sustained on the ground that it was made to pay community debts, where such debts amounted to only a fractional part of the price of the property and were not paid, or paid only in small part, out of the proceeds of the sale.

**2. Same—Application of Proceeds—Purchaser Not Protected.**

Purchasers of community property from the surviving husband will not be protected against the heirs of the wife, on the ground that they are not bound to see that the proceeds are applied to the payment of community debts, where they have knowingly co-operated with the husband in the application of nearly all of such proceeds to the discharge of the husband's individual debts.

**3. Trespass to Try Title—Recovery for Use and Occupation—Undivided Interest.**

Where defendants do not recognize plaintiffs as tenants in common, but claim title to and hold adverse possession of the entire land, plaintiffs, upon recovering judgment for an undivided half interest in the land, are entitled also to the value of the use and occupation of their half so recovered.

**4. Same—Verdict.**

In trespass to try title, a verdict finding "for plaintiffs one-half of the land in controversy, and one-half of the improvements, setting off the value of the im-

provements against the use and occupation of the land," sufficiently shows that the value of the use and occupation of one-half the land was equal to the value ·of half the improvements, and that there was no balance in favor of either party.

**5.   Practice on Appeal—Objection Below Necessary.**

The question of the sufficiency of the evidence in trespass to try title to show such possession in good faith by the defendants as entitle them to offset the value of improvements against rents, cannot be raised for the first time on appeal.

APPEAL from Walker. Tried below before Hon. J. M. SMITHER.

*McKinney & Hill* and *S. M. Randolph*, for appellants.

*T. H. Ball*, for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action of trespass to try title instituted November 3, 1893, by appellees, to recover of appellants a tract of land and the value of the use and occupation of same. Appellants pleaded not guilty and suggested improvements made in good faith. There was a trial by jury, and a verdict was rendered as follows: "We the jury find for plaintiffs one-half of the land in controversy and one-half of the improvements, setting off the value of the improvements against the use and occupation of the land." Judgment was accordingly rendered in favor of plaintiffs against defendants for an undivided half of the land and improvements.

The evidence adduced at the trial showed that plaintiffs were the heirs of Mary Ann Tucker, who died November 8, 1884. She had been the wife of Albert Tucker, Sr., who survived her since 1845, and the property in controversy belonged to their community estate acquired during marriage, and, at the time of her death, was their homestead, and was the homestead of Albert Tucker at the date of the deed to appellants, stated below. When Mary Ann Tucker died, there were debts chargeable against the community estate as follows: $85.65 due to appellants, $100 to Dr. Watson, and $100 to Dr. Thomason. The debt due Dr. Watson was subsequently paid with community property. The date of this payment is not given, but, considering the lapse of time between the death of Mrs. Tucker and the making the ·deed to appellants, as stated below, we think it fair to assume that it had been paid prior to the date of that deed. The debt due to appellants was reduced by payment made by Tucker after his wife's death, but during same year, to $43.78. It is not claimed that the payment was made out of separate funds of Tucker, or that he had any separate property; and, as it was made in a very short time after the death of the wife, we think the proper inference from all of the circumstances is, that it was made with community funds. For the balance due appellants, at the end of 1884, Tucker gave them his note. He continued trading with them during the years following until March, 1890, contracting further indebtedness and receiving credits. The balance of 1884 was carried into his subsequent accounts, and, for balances left after applying credits, he gave other notes. How much was paid in

these dealings and from what sources were derived the funds with which payments were made, the evidence does not show. So that, from the evidence, the jury could not and this court cannot find that at the date of the deed from Tucker to appellants there was left unpaid any of the indebtedness which was due to appellants at the death of Mrs. Tucker.

At the date of that deed the debt due to Dr. Thomason, amounting with interest to about $125, remained unpaid. Appellants held against Tucker his note amounting with interest to $243.37, and an account amounting with interest to $32.36.

In March, 1890, appellants and Tucker agreed upon a conveyance of the land in controversy, for a consideration of $400, of which $275 was to be applied to the payment of Tucker's debts to appellants, and the balance of $125 was to be paid in cash, Tucker stating to appellant that he needed that sum to pay Dr. Thomason's claim. Appellants consulted an attorney as to Tucker's power to convey, and were advised that he had power to make a conveyance of the property for the payment of community debts. One of the appellants thereupon wrote a deed for the property, stating as the grantors, not only Tucker and his wife (with whom he had intermarried after the death of his former wife), but also the children of the former marriage, Tucker agreeing to endeavor to induce the latter to sign the deed. They declined, and appellants accepted the deed as written, but signed only by Tucker and wife. The debt to appellants was thus paid, and they executed to Tucker their note payable on demand for the balance of $125. They did not, however, pay all of it in money, but bought a note of Tucker's for $45, held by other parties, which was not a community debt, and with this discharged part of the balance of purchase money due, paying in cash only eighty dollars. This was not applied by Tucker to the discharge of any debt against the community estate, and the Thomason debt was subsequently paid with property jointly owned by Tucker and the plaintiffs. The evidence conflicted as to the value of the place at the date of the conveyance, some of it putting it as high as $700, and some of it tending to show that, in money, it was worth less than appellants paid for it. Within three months after the deed was made, appellants were notified by one of the plaintiffs that the children of Mary Ann Tucker claimed the land and would assert their title, and that any improvements put upon the place would be made at their risk. All improvements were put on the land after such notice was given.

Since the deed was made, appellants have asserted exclusive right to the land and have excluded appellants from joint possession. The evidence conflicts as to the value of the use and occupation, but there was enough to warrant the jury in finding that the use of half of the land, exclusive of improvements, was equal to half of the value of improvements made by appellants.

After the death of Mary Ann Tucker, the legal title to the land was in Albert Tucker, Sr., but the equitable title to half of it vested

in Mrs. Tucker's children, and was held in trust for them by their father. The whole of the community estate was charged in his hands with community debts, and, for the purpose of paying them, he had the power to sell the land in controversy. The existence of debts gave him power to sell, but this power was limited to the making of a sale, fair within itself, for the purpose specified. A purchaser through such a sale would acquire title, and would not be required to see that the purchase money was applied to the discharge of the debts, unless there were circumstances sufficient to bring to his knowledge a purpose on the part of his vendor to misapply the proceeds of the property.

In order, however, to divest out of the heirs of the wife their equitable title to the half inherited from their mother, there must have been not only power in the husband to sell, but a legitimate exercise of that power. He could not legally convey their property to pay his individual debts. The burden was upon the appellants, claiming under a deed from the husband, to prove the existence of circumstances authorizing the sale. Edwards v. Brown, 68 Texas, 329. In the effort to do so, they failed to show that by the conveyance any community debt was paid. They show affirmatively that by far the greater part of the consideration paid for the land consisted of debts which were chargeable against Tucker alone; that in the very trade the purchase money was thus misapplied; and that of the small part of it which Tucker professed a willingness to devote to the discharge of a debt against the community, a considerable portion was diverted by themselves, and applied to the discharge of an individual obligation of Tucker. There is, therefore, not only a failure to show a sale made in satisfaction of community debts, but an affirmative showing that such was not the character of this transaction. The claim of forty-three dollars, which originally existed against the community estate, is not shown to have continued when the conveyance was made. If it had, we cannot say that it would be sufficient to divest the equitable title of appellees. In itself it would have been a grossly inadequate consideration for the land. As it requires a fair and legitimate exercise of the power to sell conferred by law upon the husband, in order to divest the equitable title of the heirs of the wife, it might be held, where the community debt paid in the transaction was trifling and the remainder of the consideration was a debt of the husband alone, or consisted of cash received and misapplied by him under circumstances charging the purchaser with notice, that such title has not passed, but the purchaser takes the place of the husband and holds in trust for the heirs. Whether the latter would be allowed to recover without discharging their part of the charge upon the community paid in the conveyance, is a question which we need not decide, as we do not find that any such debt was paid. The payment of the eighty dollars in cash cannot, in our opinion, protect appellants. By their own act they applied most of the consideration to debts with which the property of the heirs was not chargeable, and ought not to be allowed to uphold that transaction under the plea that they paid

a small portion of it to the husband, trusting him to properly apply it. He did not so apply it, and by their own acts appellants put it in his power to misapply it. They are not in the attitude of one who buys from the survivor of the community, selling for a legitimate purpose, and pays a fair price with nothing to charge him with notice of a purpose of the trustee to misapply the money. Under the facts, we do not think appellants acquired any right to more than the husband's interest, and that the jury properly so found. Sanger v. Moody, 60 Texas, 96.

We have carefully considered the objections made to the charge of the court, and the special charges asked and refused, and find in none of them ground for reversal. An insertion of them would extend this opinion unreasonably. The charge gave to the jury the rules above stated, in a shape as favorable to defendants as they could claim, and for the purpose of this case, was sufficiently accurate. There was no error in assuming that defendants knew the land was community property, and that plaintiffs were heirs of Mrs. Tucker. The uncontradicted evidence showed those facts. The first special charge was properly refused, as it in effect charged the jury that the mere existence of community debts at the time the deed was made would give it validity. As shown above, this is not true. The power to sell existed, but was not properly exercised.

The charge was correct in charging defendants, in case plaintiffs recovered half the land, with the value of the use and occupation of such half. Defendants did not recognize plaintiffs as co-tenants, but claimed title to and held exclusive possession of the whole tract. The case is not like those where there is an acknowledged tenancy in common, but one tenant holds possession and uses the common property without excluding his co-tenant. Such were the cases of Neil v. Shackelford, 54 Texas, 119, and Aiken v. Jefferson, 65 Texas, 143. The rule in cases like this is stated in the following authorities: Osborn v. Osborn, 62 Texas, 495; Duke v. Reed, 64 Texas, 705; Mayes v. Manning, 73 Texas, 43.

The same rule is recognized in Baylor v. Hopf, 81 Texas, 643. In the case of Thompson v. Jones, 77 Texas, 626, the rule applied in Neil v. Shackelford and Aiken v. Jefferson (supra), seems to be treated as applicable to the case then before the court, but we do not understand that decision to dispute the correctness of the decisions which we follow.

There was in the present case no recovery of rents, but they were simply set off against defendants' claim for improvements. Defendants claimed compensation for improvement of the land, and it would be difficult to defend a rule which would allow them such compensation, and at the same time refuse to charge them with the value of the use of plaintiff's land which they have withheld from the owner and used as their own.

The verdict of the jury was, we think, sufficient. Its effect under the charge was to find that the value of use and occupation of half the land was equal to half the value of improvements, and hence there was

no need of a fuller finding on these issues, as there was no balance to be adjudicated in favor of either party.

Appellees have asked us, in their brief, to review the finding of the jury allowing appellants the value of their improvements in satisfaction of rents, and to here render judgment for rents. Their contention is that appellants were not possessors in good faith. No motion for a new trial was made by appellees in the lower court, nor was a question as to the sufficiency of the evidence to sustain the verdict on this point in any way presented to that court, and we do not think it can be raised for the first time on appeal. We could not, in any event, fix the amount of rent to which appellees would be entitled, and render the judgment, as the case was tried by jury.

The judgment is affirmed.

*Affirmed.*

Delivered September 26, 1895.