### SCHLUTER v. SELL et al.
#### No. 9541.

Court of Civil Appeals of Texas. Austin.
April 10, 1946.

Rehearings Denied May 1, 1946.

Saner, Saner, Jack & Sallinger and W. H. Jack, all of Dallas, for appellant.

Nathaniel Jacks, of Dallas, for appellees.

BLAIR, Justice.

Appellee, Dorothy Sell, joined pro forma by her husband, James B. Sell, sued appellant, Frederick Augustus Schluter, upon two causes of action, which arose as follows:

On June 16, 1920, appellee and appellant were married, and on January 25, 1922, they purchased certain real estate in Dallas, Texas, the partition of which is the subject matter of the first cause of action asserted herein by appellee, the parties having been divorced by court decree several years prior to the institution of this suit. Appellee also sued for taxes and other items expended by her on the property in

suit, and prayed for an equitable lien against appellant's interest in the property to secure the payment of his part of such items of expenditure.

The right to partition the property is admitted. The controversy here arises over the allowance of the items of taxes and other expenses sued for by appellee in the sum of $1,783.47, with a lien to secure same as prayed by her.

In December, 1929, appellant sued appellee for a divorce in the Superior Court, County of Kern, State of California, and on July 1, 1930, secured an interlocutory decree of divorce under the laws of California. A son, Charles Carrol Schluter, born of this marriage on July 8, 1922, was by the divorce decree awarded to appellee, and the decree required appellant to make certain payments for his support. The court further decreed "that plaintiff (appellant) pay the sum of $200.00 for court costs expended by said defendant (appellee) and pay to the defendant the sum of $2,000.00 attorneys fees upon the entry of judgment herein." No appeal was taken from the interlocutory decree of divorce, but appellant appealed on a cost bond from the judgment awarding appellee said attorneys fees and costs, which judgment was affirmed by the Court of Appeals of California on April 3, 1933. The court reversed the decree requiring appellant to pay certain amounts for the support of the child, and as to other matters not material here. The second cause of action asserted by appellee herein, filed on June 3, 1942, is for a personal judgment against appellant for the balance due on the California judgment, which, with interest at the rate of 6% per annum from July 1, 1930, aggregated $3,729.91, and for which amount appellee recovered judgment herein.

As defense to the cause of action on the California judgment appellant alleged that he has continuously since August 1, 1930, resided in the State of Texas and that such judgment is barred under the provisions of Article 5530, because (a) the judgment is barred under the statutes and Code of Civil Procedure of the State of California, and (b) that the action is barred since appellant has resided in Texas for more than ten years prior to June 3, 1942, the date when

this suit was filed on the California judgment rendered on July 1, 1930.

The parties present first the questions of limitation relating to the California judgment. The controlling statute plead in this connection is Art. 5530, R.S.1925 (Vernon's Ann.Civ.St.), which reads: "Every action upon a judgment or decree rendered in any other State or territory of the United States, in the District of Columbia or in any foreign country, shall be barred, if by the laws of such State or country such action would there be barred, and the judgment or decree be incapable of being otherwise enforced there; and whether so barred or not, no action against a person who shall have resided in this State during the ten years next preceding such action shall be brought upon any such judgment or decree rendered more than ten years before the commencement of such action."

With respect to the first portion of the foregoing statute appellant alleged that at the time of the filing of this suit on the California judgment it was barred or dormant and not enforceable under Sections 681 and 685 of the Code of Civil Procedure of the State of California and in consequence was not enforceable in Texas. These sections read:

Section 681: "The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement. If, after entry of the judgment, the issuance of execution thereon is stayed or enjoined by any judgment or order of court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the five years within which execution may issue."

Section 685: "Execution of judgment after five years. In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall,

in the discretion of the court, be sufficient, shall be ground for the denial of the motion. Judgment in all cases may also be enforced or carried into execution after the lapse of five years from the date of its entry, by judgment for that purpose founded upon supplemental proceedings; but nothing in this section shall be construed to revive a judgment for the recovery of money which shall have been barred by limitation at the time of the passage of this act."

Appellee contended and the trial court held (1) that the California judgment was not barred or dormant under the California statutes because such statutes were tolled by appellant's continuous absence from that state since July 1, 1930, and (2) that since the California judgment did not become final until it was affirmed by the Court of Appeals of California on April 3, 1933, the period of ten years prescribed by the last part of Art. 5530 had not run when this suit on the judgment was filed on April 3, 1942.

■ Appellee at no time filed a motion for execution of the California judgment after five years from the date of its rendition, or after it became final, as required by Section 685, and such judgment was barred or dormant under Section 681 and was not enforceable in California when appellee filed this suit in Texas to recover thereon on June 3, 1942. These facts bring appellee's suit clearly within the first part of Art. 5530, which provides that an action on a judgment of another state "shall be barred, if by the laws of such State * * * such action would there be barred, and the judgment or decree be incapable of being otherwise enforced there."

The California courts hold that the proceeding to obtain an execution under Section 685 is not an action or a special proceeding of a civil nature, but is merely a subsequent step in an action already adjudicated but barred by the operation of other statutes of limitation. The courts further hold that "whether a dormant judgment shall be enforced is a matter within the sound discretion of the trial court. (11 Cal.Jur. Executions, § 12, p. 51)." Faias v. Superior Court, 133 Cal.App. 525, 24 P.2d 567, 569; Pacific Gas & Electric Co. v. Elks Duck Club, 39 Cal.App.2d 562, 103 P.2d 1030; and Saunders v. Simms, 183 Cal. 167, 190 P. 806, 808, wherein the court say: "Section 685 is a limitation upon the operation of the statute of limitations under section 336 of the Code of Civil Procedure to the extent that it places within the discretion of the courts the power to authorize the enforcement by the ordinary processes provided by law of a judgment otherwise barred by the statute."

A well-considered case directly in point here is Fowler v. Pilson, 74 App.D.C. 340, 123 F.2d 918, 920, which construed Sections 335, 336, 681 and 685 of the California Code of Civil Procedure, and Section 343, T. 24, of the District of Columbia Code 1929, the provisions of which are identical with the above-quoted provisions of our Art. 5530. In the Fowler case the owner of a California judgment filed a creditor's bill in the District of Columbia to have a lien fixed upon the interest of the judgment debtor in the estate of his grandfather. The judgment was barred by the statutes of limitations of California and the holder or owner had not filed a motion for execution of the judgment as required by Section 685. The court held that such action on the judgment was barred under Section 343, D.C.Code. The opinion clearly expresses our views, as follows:

"Defendant does not deny that the California judgment might be enforced there through application of the special procedure on execution (Section 685), if property could be found amenable to that process, notwithstanding the five-year period allowed by enforcement by action has expired. But he insists this procedure is not only exclusive, but discretionary, with the California court; that the steps required to bring it into effect have not been taken; and that until that is done the judgment is entirely unenforceable in California. Consequently he concludes that the conditions of the District statute have been fulfilled, in that action has been barred in California by Section 336 and the judgment is 'incapable of being otherwise enforced there.'

\* \* \* \* \* \*

"It seems clear therefore that this suit could not have been maintained in California courts if it had been brought there

when it was begun here. This conclusion is sustained by the California decisions, which are uniform in 'holding that independent proceedings for enforcement of the judgment cannot be maintained after the lapse of five years from its entry. (Citing above cited cases.)

\* \* \* \* \* \*

"We think the sounder basis for decision exists in defendants' argument that enforceability within the meaning of Section 343 means a right of enforcement which exists at the time suit is begun here, not a mere possibility of enforcement in the future which depends upon a further showing of facts and a further exercise of judicial discretion. \* \* \*

"We do not believe it was the intention of Section 343 to require or permit enforcement here of foreign judgments dormant in this sense. Possibility of revival, of course, means possibility of enforcing or satisfying the judgment after revival takes place. But we do not believe that such a contingency of satisfaction is contemplated by the words 'otherwise enforced' or by the general purpose of the act. In view of the widespread existence of provisions for revival of judgments, the contrary view would make Section 343 practically a dead letter.

"If provision for revival is insufficient as a means of enforcement to stop the operation of Section 343 as a bar to the suit, we see no good reason why this should not be true also of the special procedure on execution provided by the California statute. That procedure is in substance, if not in form, one for revival, though with limited effect. Issuance of execution is not automatic at the judgment creditor's election. It is discretionary with the court. Unless the discretion is exercised, and in the creditor's favor, the judgment is unenforceable. Furthermore, it can be exercised only in accordance with the statutory procedure. This is upon the creditor's motion, accompanied by affidavits, and after notice to the judgment debtor. Although the proceedings are part of the original litigation, they possess the essential qualities of independent judicial action, notice, hearing and exercise of judicial discretion. They constitute, in effect, a method of reviving the judgment, but with relief limited to the issuance of execution. That is true though the statute also makes provision for general revival founded upon supplemental proceedings. Until one or the other of these two procedures is made effective, the judgment is entirely dormant, and it is so denominated and regarded by the California courts. Tolle v. Doak, 1936, 12 Cal.App.2d 195, 55 P.2d 542. If provision for general revival would be insufficient to bar the action under Section 343, it would seem that the provision for this special and more limited revival would be so also. Each presents only a possibility that the judgment may be enforced at some future time. At the date of this suit, therefore, the California judgment was incapable of being otherwise enforced within the meaning of Section 343."

In support of appellee's contention and the trial court's judgment that the foregoing statutes were tolled during the absence of appellant from the state of California since about August 1, 1930, the case of Caples v. Caples, 5 Cir., 47 F.2d 225, 226, is cited, and wherein the court say: "There is no doubt that under the law of California the statute of limitations was tolled during the absence of appellant. Sections 351, 681 and 685 of the Code of Civil Procedure of California; section 5530, Revised Civil Statutes of Texas; Chappell v. Thompson, 21 Cal.App. 136, 131 P. 82; Stewart v. Spaulding, 72 Cal. 264, 13 P. 661."

Section 351 reads: "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

Section 351 has no application to the proceeding required by Section 685 to revive a dormant judgment, and it was not so applied in the Caples case. The judgment sued upon in the Caples case was not dormant nor unenforceable when that suit was filed. The judgment creditor had fully complied with the provisions of Section 685 and had secured a court order to ex-

ecute the judgment. In consequence at the time the suit was filed on the Caples judgment it was a valid, subsisting and enforceable judgment in California, and as to which Section 351 tolled the running of the statutes of limitations during the absence of the judgment debtor from that state. Manifestly Section 351 has no application to nor does it eliminate during the absence of the judgment debtor from the state the necessity of the judgment creditor's complying with the requirements of Section 685 to revive a judgment dormant under Section 681 before a suit may be maintained thereon, or before execution after five years from its rendition may issue thereon. Since no execution could issue to enforce the California judgment here involved in that state when appellee filed this suit thereon, the judgment was clearly not enforceable there, and the action on the judgment was barred under the first portion of our Art. 5530. Enforceability within the meaning of such statute means a right of enforcement which exists at the time suit is begun here, and not a mere possibility of enforcement in the future which depends upon a further proceeding and showing of fact, and a further exercise of judicial discretion as to whether execution may issue on such judgment.

The point here involved was decided by the Court of Civil Appeals at El Paso in the case of Tourtelot v. Booker, 160 S.W. 293, 299 (writ refused), where under a similar state of facts the court say: "We need not decide here the question as to whether, under the laws of North Dakota, the cause of action upon the judgment is barred by the statute of limitation of that state. Under the authority of Weisbecker v. Cahn, supra [14 N.D. 390, 104 N.W. 513], the judgment at the time of bringing this suit was dormant, and it was incapable of being enforced in the state of North Dakota unless it be first revived there. Nor do we think it incumbent upon us to decide whether or not, the judgment being dormant, it could be revived by a suit instituted in the state of North Dakota, since we are of opinion that by the great weight of authority a judgment which has been allowed to become dormant under the laws of the state where it was rendered cannot be en-

forced by an action in another state, for to allow such enforcement would be to give effect to that which had no effect in the state where said judgment was rendered. Am. & Eng. Enc. of Law (2d Ed.), vol. 13, p. 1002; Chapman v. Chapman, 48 Kan. 636, 29 P. 1071; St. Louis, etc. v. Jackson, 128 Mo. 119, 30 S.W. 521; Baker v. Stonebraker, 36 Mo. [338], 339. We are of opinion, therefore, that, the judgment being dormant at the time of the institution of this suit in the state of North Dakota, the plaintiffs should not be permitted to maintain a cause of action upon it in this state."

There is no merit to the contention that if appellee had attempted to comply with the requirements of Section 685 to revive the California judgment, no service could have been had upon appellant so as to confer jurisdiction on the California court to revive the judgment, because he has resided in Texas since August 1930. The proceedings under Section 685 to obtain the execution of a judgment after five years is not a new suit or civil action, but is merely a proceeding or subsequent step to enforce a judgment wherein the defendant has already been cited and appeared, and reasonable notice is all that is required to support the judgment of revival or to enforce execution of the judgment. This question is treated in the case of Collin County Nat. Bank v. Hughes, 110 Tex. 362, 220 S.W. 767, 768, wherein the court say that: " * * * Where the proceeding is so considered there are holdings that jurisdiction duly obtained in the original suit over the person of the defendant will endure for the revival of the judgment, and the giving of reasonable notice to him will support the judgment of revivor. Comstock v. Holbrook, 82 Mass. 111, 16 Gray 111, is such a decision, but in such cases, the judgment of revivor does not become the judgment. It merely revives the judgment—restores it to its original force."

The giving of such notice is all the California statute required, and the giving of such notice to appellant in Texas would have been sufficient to support the judgment of revivor, or for execution of the judgment. This was not done and the California judgment was dormant and unenforceable when appellee filed suit thereon

here. The question of whether it could have been revived under proper procedure in California is not of importance. Under the rule stated in the Tourtelot-Booker case, supra, it is not incumbent upon the Texas court to decide, the judgment being dormant, whether it could be revived by a proceeding in California, for the reason that where a judgment has become dormant under the laws of the state in which it was rendered, it cannot be enforced by action thereon in another state. To so enforce the dormant judgment would give effect to that which had no effect in the state of California where the judgment was rendered. We, therefore, conclude that since the judgment was dormant in the State of California at the time of the institution of this suit thereon in Texas, the suit cannot be maintained under the plain and specific language of Art. 5530.

█ We are also of the view that appellee's action on the California judgment was barred under the second provision of Art. 5530. That is, appellee's action on the California judgment, "whether so barred or not" under the laws of California, is clearly barred under the provision of Art. 5530, that "no action against a person who shall have resided in this State during the ten years next preceding such action shall be brought upon any such judgment or decree rendered more than ten years before the commencement of such action." The California judgment was rendered on July 1, 1930. Appellant has resided in Texas since August 1, 1930, except for a temporary absence on a pleasure trip to the Philippines for five months in 1931–1932, and continuously since March 11, 1932, when he returned from his pleasure trip. This action on the California judgment was filed June 3, 1942, more than ten years after appellant's continuous residence began in Texas on March 11, 1932, and more than twelve years after the California judgment was rendered on July 1, 1930.

There is no merit to the contention of appellee that notwithstanding the residence of appellant in Texas since August 1, 1930, and continuously since March 11, 1932, limitation did not begin to run until April 3, 1932, when the California Court of Appeals affirmed the judgment rendered by the trial court on July 1, 1930. The appeal was on cost bond alone, and the judgment was in no manner stayed pending such appeal. Appellee caused four executions to issue thereon in 1930, and collected small amounts thereunder, which were applied as payments on the judgment. The language of Art. 5530 is plain and specific, and bars a suit in this state on a judgment of another state "rendered more than ten years before the commencement of such action" against a person who has resided for ten years in this state. In Collin County Nat. Bank v. Hughes, supra, it is expressly held that the date of the rendition of the original judgment in another state fixes the time for the running of limitation under Art. 5530.

Nor is there any merit to the contention of appellee that this action on the California judgment is not barred under Art. 5530, because no final judgment for divorce was entered until the nunc pro tunc decree of divorce was entered on November 10, 1944. The nunc pro tunc divorce decree had no reference to the portion of the judgment allowing appellee $200 costs and $2,000 attorney's fees, which was rendered July 1, 1930, and was affirmed later by the appellate court. This judgment was enforceable in California until five years after the date of its rendition on July 1, 1930. It then became dormant, and has been so since.

█ The remaining questions relate to appellee's suit for an accounting for one-half of the taxes, insurance and expenses for repair, care and upkeep of the jointly owned property.

Appellant contends that since appellee had the exclusive possession, control, and use of the property from 1930 to 1940, the court erred in refusing to charge her with its reasonable rental value as an offset to her expenditures thereon for the same period. This general rule is not controverted, but it has no application to the facts of the instant case, because, except for the time accounted for by appellee, the use of the property was for the equal benefit of appellant and appellee. They both acquiesced in and consented to the use of the property as a home for the minor son,

Charles Carroll Schluter, who occupied the premises with his maternal grandmother during the time he attended school from 1935 to 1940. In 1931, prior to the final decree of divorce in 1932, appellee occupied the premises part of the time with her minor son. The house was a small house or garage built on the back of a large lot, and was in bad repair in 1933, when appellee permitted Mr. and Mrs. Godley, the latter a sister of appellee, to occupy the premises for about five months, in consideration of their paying the expenses for repairing the floor and plumbing, and for painting and care of the yard and hedges, which expenses benefited the whole property, and no part of such expenses are sought to be recovered by appellee from appellant herein. The son of appellant and appellee seems to have lived with the Godleys while they occupied the house, and for their care of him appellant thanked them by letter. The property was thereafter vacant until appellee occupied it for three months in 1935, while proceedings to compel appellant to contribute to the support of his minor son were being prosecuted. Appellee has accounted for the reasonable rentals for this period with interest at 6% per annum. At a grand jury investigation in 1935 to require appellant to support his minor son, he represented that he was furnishing this home to his son, and was additionally required to pay $30 monthly, which he was unable to do, but which appellant's mother paid.

Appellant testified that although he did not give his son permission to live in the premises, that "naturally I expected him to live there if he wished to do so," and that he was perfectly willing for him to live there. Appellee testified that although she preferred that her son should live with her in another state where she had moved, he wished to attend a certain school in Dallas, and she consented that he should live in this house, and she secured her mother to live with him and to keep house for him without expense, her mother being financially able to care for herself.

Appellant testified further that during all the 1930–1940 period he had nothing to do with the property, having only seen it twice during that period. He sued appellee in 1932 for partition of the property, but dismissed the suit when she answered that the California divorce decree had not become final.

During all of these years appellee has paid the taxes, insurance and expenses for the repair, care and upkeep of the property. She testified as to her possession and control of the property, "Well, you see, no one ever looked after the place but me. There was no one there to do so, and even then there was a suit filed against me if I did not look after it or take care of it. It rested on me to do so."

The foregoing facts clearly support a finding that neither appellant nor appellee had the exclusive possession, control and use of the property, and that except for rentals accounted for by appellee, the property had been used for their equal and mutual benefit as a home for their minor son. Each of them was morally and legally bound to support him, and each contributed their one-half interest in the jointly owned property to that end. Appellant and appellee were cotenants and neither exercised any possession, occupancy, control or use that denied to the other the use of the property as the home of the minor son. For that purpose and during the son's occupancy the cotenants received equal benefits for the use of their jointly owned property. And since during the occupancy of the property by their minor son appellee only exercised that degree of possession, control, occupancy or use necessary to the protection of the property and because of the failure and refusal of appellant to do anything about the property, appellee is not liable to him for the reasonable value of rentals during such occupancy. Appellee is only liable for the reasonable rental value during the time she herself occupied the property, and for rentals she actually received from others, all of which appellant was allowed to recover with interest at 6% per annum thereon as an offset to the recovery by appellee. The rule is settled that "unless the right of the co-tenant to the equal use and enjoyment of the property is denied by the tenant in possession, such tenant is not liable for rents for the use of the property." Morris v. Morris, 47 Tex.Civ.App. 244, 105 S.W. 242, 250;

Akin v. Jefferson, 65 Tex. 137, 142 ; Minus v. Doyle, 141 Tex. 67, 170 S.W.2d 220; Neil v. Shackelford, 45 Tex. 119; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 355, 55 S.W. 119, 56 S.W. 330.

■ Nor is there any merit to the contention of appellant that the court erred in rendering judgment for appellee for one-half of the sums spent in the repairs and maintenance of the property, because no evidence was adduced to show that such expenses enhanced the value of the jointly owned property. The necessity of showing enhancement of the jointly owned property applies only to improvements or betterments, and not to expenses, upkeep, repair or preservation of the joint property. The expenses sued for by appellee were not for improvements, but merely for care, upkeep and repairs, and were for the preservation of the property.

■ In 11 Tex.Jur. 458, 459, § 37, the rule applicable is stated to be that:

"If one cotenant makes an outlay for the necessary or proper preservation of the common property he is ordinarily entitled to be reimbursed by the others, according to their interests, and equity will give him a lien to enforce repayment." And:

"The expenses for necessary care, upkeep and preservation would constitute a common charge against the cotenants with an appropriate equitable lien in favor of the one furnishing them." See also Hanrick v. Hanrick, 110 Tex. 59, 173 S.W. 211, 214 S.W. 321; Gray v. Taylor, Tex.Civ. App., 138 S.W.2d 891.

Points 5 and 6 of appellant's brief are not sustained, that appellee should not have been allowed to recover one-half of the expenses for having lawns and hedges cut, and payment of taxes during the period of 1930 to 1940, because they were merely incidental to her use, occupancy and enjoyment of the property for that period, or were not shown to have enhanced the value of the property. Our foregoing conclusions answer these points. The property was not exclusively possessed, controlled and used by appellee. Neither of the parties was in possession during that period, except the few months appellee occupied it or rented it to others, for which rentals she accounted to appellant. For most of the period the property was used for the equal and mutual benefit of appellant and appellee as a home for their minor son. And since appellee paid the taxes and expenses of repair, upkeep and keeping the lawns and hedges cut, the latter under requirement of a city ordinance, and accounted for all rentals due by her, she was entitled under the foregoing rules to be reimbursed by the other cotenant for his one-half, and equity gives her a lien on appellant's interest in the property to enforce repayment of these items.

■ Nor is there any merit to the contention of appellant that the court erred in allowing interest on the items paid by appellee for taxes, repairs, maintenance, etc., from the date of payment thereof. She specifically sued for interest on these items from the date of payment thereof. Appellee testified that she never intended these payments as gratuities, and intended that appellant should repay her for his portion of these advancements made to preserve the property.

■ It is the general rule that one who lends money to or makes advancements for another is entitled to interest, although nothing is said about interest. Parsons v. Parsons, Tex.Com.App., 284 S. W. 933; and in 40 Tex.Jur. 210, it is said that where "one co-tenant pays taxes on property jointly owned (he) is entitled to contribution, and the state's lien for such taxes passes to him so that he has a lien on his co-tenant's interest." Where pleaded interest is usually allowed on taxes paid by one having an interest in land from the date of payment. McDermott v. Steck Company, Tex.Civ.App., 138 S.W.2d 1106.

■ Having reversed and rendered judgment for appellant on one of the causes of action asserted by appellee, and having affirmed the other judgment in her favor, we decree that the court costs shall be paid equally by the parties.

The judgment is reversed and rendered in part and affirmed in part.

Reversed and rendered in part and in part affirmed.