Complainants seek partition of two adjacent parcels of land on Twentieth street in Newark, owned in common by complainants Charles and Emil Lach, and their sister the defendant Mildred Weber, as heirs of their late father. Mrs. Weber, by counter-claim, seeks to bring into the partition a third property, situate on West street in Newark. This piece was owned by the parents of the three children as tenants by the entirety, and upon the death of the elder Mr. Lach in 1915, title passed to his widow. She remarried, and died in 1931 intestate, survived by the three children of her first marriage and by a fourth child Frank Korese, Jr., the son of her second husband. Her husband also survived her. The property was encumbered by a mortgage for $2,800 held by the United States Savings Bank. In the fall of 1934, the bank instituted foreclosure suit, bought in the property at sheriff's sale and on February 15th, 1935, conveyed it to Mrs. Weber. She alleges that she took and holds it not for herself alone but in equal shares for her brothers, the complainants. And here is the unique feature of the case: They deny that they have any equitable title or other interest in the property.
Complainants also say that any agreement between them and their sister respecting their interest in the land "is not evidenced by any deed, any note in writing signed by these complainants, their agent or agents thereunto lawfully authorized." This defense seems to have been drafted with an eye to Rev. Stat. 25:1-5
(d), that section of the statute of frauds which provides that no action shall be brought upon any contract or sale of real estate, or any interest in or concerning the same, unless the contract, or some note thereof be in writing, signed by the party to be charged therewith, or by his agent. *Page 305 
The agreement to which complainants refer is one whereby the parties are alleged to have agreed that Mrs. Weber should buy back the property from the bank, for the benefit of her brothers as well as herself. But her cause of action set up in the counter-claim is not brought upon the contract. True the agreement is mentioned but only as inducement; it was fully performed when the bank conveyed to Mrs. Weber. The substance of her complaint is that she and her brothers are now the equitable tenants in common of the land. The lack of a signed memorandum does not preclude her from proving the agreement which led her to take legal title to the land. Cooper v. Colson, 66 N.J. Eq. 328; Atlantic City Railroad Co. v. Johanson, 72 N.J. Eq. 332;Halpern v. Shurkin, 98 N.J. Eq. 28.
The complainants' answer also pleads the statute of frauds generally and their counsel, upon the argument, has stressedRev. Stat. 25:1-3, the section which requires all declarations of trust in real estate to be "manifested and proved by some writing signed by the party who is or shall be, by law, enabled to declare such trust, or by his last will in writing." The statute merely prescribes a rule of evidence; the trust can be created by parol but it must be proved by a writing. McVay v.McVay, 43 N.J. Eq. 47. The writing need not be signed by the alleged beneficiaries of the trust — here, the complainants — but only by the declarer of the trust or, in the present instance, Mrs. Weber. A pleading in which the existence of the trust is declared or admitted by the trustee, satisfies the statute.Jamison v. Miller, 27 N.J. Eq. 586. Mrs. Weber, by her counter-claim, admits the trust. Furthermore, the statute was enacted for the protection of the holder of the legal title, not to protect the cestuis que trust from having an equitable title thrust upon them. No one except the trustee or persons succeeding to his interest can take advantage of a failure to comply with the statute. Restatement, Trusts § 51. The plea of the statute must be overruled. It remains to consider whether the evidence proves the existence of the trust.
Mrs. Weber testifies that when the bank threatened foreclosure, she consulted her brothers and the three of them *Page 306 
decided to let the bank foreclose and then to buy the property back from the bank. In this way, the interest of their step-father and their half-brother would be cut off. They further agreed that title should be taken in the name of Mrs. Weber, because one of the brothers, Charles, was estranged from his wife and the wife of the other brother was a minor. The plan was carried into execution. The bank conveyed to Mrs. Weber, for an amount equal to principal and accrued interest on the old mortgage, plus foreclosure costs. She executed a new mortgage for $3,000 and paid the balance in cash, as well as tax arrears.
The complainants deny the vital part of this testimony. They say that when the matter was talked over, about the time foreclosure was begun, they told their sister that they considered the property a burden and not worth keeping and that was the end of it, so far as they were concerned. But Emil Lach further testified that until this partition suit was begun late in 1936, he understood and believed that title ran to all three; that he was legal, as well as equitable, owner of an undivided one-third. Mrs. Weber, who collected rents until the summer of 1936, made up each month a statement showing the rents received from West street as well as Twentieth street, and the expenses, and the balance remaining. The rents from all the properties were treated in the accounts as a single fund. Each month she submitted the account with supporting vouchers to her brothers, who carefully went over them. Their checkmarks for items questioned appear on the accounts which have been produced in evidence. After July, 1936, Charles and Emil collected the rents, including those from West street, and continued to do so until the beginning of this suit. Also, the two brothers and their sister borrowed $1,500 on mortgage on Twentieth street and used the proceeds to pay taxes not only on Twentieth street but on West street. It is needless to set forth other circumstances contradicting the brothers and indicating that they recognized they had an interest in the West street property after the foreclosure. I accept as true the testimony of Mrs. Weber and find that the three parties are, in equity, tenants in common of the land on West street. *Page 307 
When several parcels are held by the same parties as tenants in common, and one of the tenants seeks to partition part only of the land, leaving the rest undivided, another tenant, by counter-claim, can bring the remaining lands into the suit to be likewise partitioned. 47 C.J. 332, 490. It is no obstacle to partition that legal title is vested in one of the parties and that the other two have only an equitable fee, coupled with a present right to a conveyance of their shares of the legal title.Sailer v. Sailer, 41 N.J. Eq. 398; Weaver v. Patterson,92 N.J. Eq. 170.
Since this suit started, the complainant Charles Lach and his wife Florence Lach have been divorced, and he has married a second time. His present wife, Irma Lach, on January 9th, 1937, quit-claimed the Twentieth street property to her brother-in-law Emil, in order, as recited in her deed, that she could have no claim for dower or other interest in the lands. Whether this instrument is efficacious for that purpose, I cannot decide since she is a stranger to the suit. She should be joined to avoid a questionable title. When, by proper supplemental proceedings, she shall have been brought in, there may be a decree for an accounting and a partition of the three lots. As there are three lots and three tenants, it may be that a physical partition will be practicable and that the hazard of a forced sale may be avoided.
A question about the accounting has arisen. Mrs. Weber has used rents from one of the properties to pay taxes, c., on the other properties. Should she be credited with such payments? She has advanced her personal funds for the same purposes. Can she demand contribution from her brothers? The answer is found in Roll v.Everett, 73 N.J. Eq. 697, and Woolston v. Pullen, 88 N.J. Eq. 35.
A tenant in common who discharges a lien, or makes necessary repairs upon the common property has a right to contribution from his co-tenants. He has not merely a lien upon their shares of the land, but has a right against them personally. It follows that Mrs. Weber, on the account, should be credited with such payments regardless of which particular property was involved in the payment. A general account must be drawn, comprehending all three properties. *Page 308