## GRAY v. TAYLOR et ux.

### No. 14053.

Court of Civil Appeals of Texas. Fort Worth.

March 15, 1940.

Rehearing Denied April 12, 1940.

T. R. Boone, of Wichita Falls, for appellant.

James W. Harvey, of Archer City, and ·Kilgore & Rogers, of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

On May 9th, 1921, W. H. Taylor and wife, the owners of the fee, executed to H. C. Lampkin and F. W. Dumraese an oil and gas lease on 20 acres of land in Archer County. One of the stipulations in that instrument was the agreement of the lessees "to deliver to the credit of the lessors, free of cost, in the pipe line to which they may connect their wells, the equal 4/8ths part of all oil saved and produced from said leased premises."

On May 11th, 1921, those lessees entered into a contract with S. D. Harper and J. E. Jones, composing a partnership, by the terms of which Harper and Jones contracted to develop the lease for oil and gas, in consideration of which Lampkin and Dumraese contracted and agreed to execute and deliver title to 7/16ths of all the oil and gas produced from the lease, thus leaving 1/16th interest remaining in Lampkin and Dumraese. In that contract, Lampkin and Dumraese were designated parties of the first part, and Harper and Jones as second parties, and it embodied these stipulations:

"Second parties contract and agree to drill at least four wells for oil and gas on said land, the first of said wells to be commenced within 15 days from May 9th, 1921; the second well to be commenced within 15 days after the completion of the first well; the third well to be commenced within 15 days from the completion of the second well; and the fourth well to be commenced within 15 days after the completion of the third well; all drilling operations to be prosecuted with due diligence until each well is drilled and completed, to a depth of 1700 feet, unless oil or gas is found in paying quantities at a less depth.

"Second parties agree to drill said wells entirely at their expense for all labor and materials necessary to drill and complete said wells, including all casing and supplies necessary to connect said wells with pipe lines or tanks to receive the oil therefrom;

after said wells shall have been completed for the production of oil as aforesaid, all further expenses of operation and maintenance for all the wells which may be drilled on said lease shall be borne equally by the parties to this contract.

"It is agreed that all other wells which may be drilled on said lease shall be drilled and equipped at the equal expense of each of the parties to this contract."

On May 12th, 1921, H. C. Lampkin and F. W. Dumraese transferred and assigned to Harper & Jones Drilling Company 7/16ths of the leasehold estate theretofore acquired by them from W. H. Taylor and wife, thus leaving the grantors a 1/16th interest.

On May 28th, 1921, Harper and Jones conveyed to R. J. Donohue an undivided 1/16th interest out of the 7/16ths interest recited to be the interest they had acquired from Lampkin and Dumraese, the interest so conveyed being designated as an overriding royalty.

On February 21st, 1922, H. C. Lampkin, F. W. Dumraese and J. W. Donehoo, as first parties, entered into a contract in writing with S. D. Harper, as second party, reciting the execution of the contract of date May 11th, 1921, shown above, by the terms of which the first parties agreed and obligated themselves to pay to Harper & Jones Drilling Company ½ of all sums of money expended by them in the operation and maintenance of the oil and gas lease, and that Harper was the sole owner of all the title theretofore existing in the partnership firm of Harper & Jones Drilling Company, and that Harper had theretofore filed a material contractor's lien against the 1/16th undivided interest of the first parties, in and to the lease theretofore acquired by them, for the purpose of securing the sum of $2,455.63, owing to the second party Harper, for ½ the cost of operating and maintaining two certain wells located on the lease, and:

"Whereas, some dispute has arisen as to the correctness of said above mentioned claim for $2,455.00, the parties hereto have entered into the following contract and agreement, which is to be in lieu of and supercede that provision of the above mentioned contract of May 11th, 1921, providing for the distribution of expense of operating and maintaining said above lease. First party hereby agrees that from August 1st, 1921, until January 31st, 1922, inclusive, second party shall receive the sum of $90.00 per month, to cover first parties' pro rata part of the expense of operating and maintaining said above described lease, and the Texhoma Oil & Refining Company is hereby authorized to pay to second party the sum of $540.00 from the proceeds due first party for their 1/16th part of the oil run from said lease, before making any payment direct to them for any oil run from said lease. That after February 1st, 1922, first parties agree to pay second parties the sum of $90.00 per month for their pro rata part of the cost of operating and maintaining the lease above described, until the completion of wells Nos. 3 and 4 upon said lease, which said wells are to be hereafter drilled by second party; and after the completion of said wells Nos. 3 and 4, first parties agree to pay to second party the sum of $100.00 per month for their pro rata cost of operating and maintaining said lease. The Texhoma Oil & Refining Company, its successors and assigns, are hereby authorized and directed to pay to the said S. D. Harper the sum of $90.00 per month, as above provided, from and after February 1st, 1922, until the completion of wells Nos. 3 and 4 above referred to, and after the completion of said wells, to pay to the said S. D. Harper the sum of $100.00 per month, said payments to be made from any funds due by the said Texhoma Oil & Refining Company to first parties herein, for their undivided 1/16th interest in the oil run by said company from said lease. The parties hereto agree to notify the Texhoma Oil & Refining Company, in writing, of the completion of wells Nos. 3 and 4.

"It is expressly understood and agreed by and between the parties hereto that the sum of $100.00 per month is to be paid to second party as hereinabove stipulated, until such time as the parties hereto may mutually agree to vary or change the amount of said monthly payments.

"It is further expressly understood and agreed by and between the parties hereto that the 1/16th interest in and to said above described lease owned by first parties, is held and owned by them in the following proportion, namely:

"H. M. Lampkin, 1/3 of 1/16.

"F. W. Dumraese, 1/3 of 1/16.

"J. W. Donehoo, 1/3 of 1/16.

and in this proportion the above named parties shall bear their respective part of the above stipulated monthly operating expense, that is, $30.00 per month shall be paid from any sum that may be due and owing to each

of the first parties herein, until the completion of said wells No. 3 and 4, as above specified and thereafter, the sum of $33.33-1/3 shall be paid from any amount due and owing each of said parties, for oil run from the above described lease, until such time as this contract may be mutually changed as hereinafter provided.

"It is understood and agreed that the terms and condition of this contract shall inure to the benefit of, and be binding upon the heirs, executors, administrators and assigns of the parties hereto."

The Statement of Facts shows an agreement of the parties on the trial that the parties who signed the last noted instrument, of date February 21st, 1922, were then the owners of the oil and gas lease. And further, that plaintiff Herbert S. Gray later acquired all other interests in the leasehold estate, except said 1/16th interest. And that on or about June 12th, 1937, the owners of said 1/16th interest released the same to defendants W. H. Taylor and wife.

On September 19th, 1933, defendants W. H. Taylor and wife, Mary Ann Taylor, executed and delivered to W. P. Ferguson an instrument in writing, reciting the execution by them of their lease to H. C. Lampkin and F. W. Dumraese, and further reciting:

"That said lease provided, among other things, that lessees were to deliver to the credit of lessors, free of cost, in the pipe line to which they might connect said wells, the equal 4/8ths part of all oil saved and produced from said leased premises.

"That W. P. Ferguson is the owner of said oil and gas lease, and that his predecessors in title created an indebtedness of ten thousand dollars ($10,000.00) against said property, and that same is now owing to the undersigned, but that said W. P. Ferguson is in no way personally liable for same.

"That there is a present danger of an abandonment of said lease, and to avoid such abandonment, we, the said W. H. Taylor and wife, Mary Ann Taylor, hereby sell and convey to W. P. Ferguson, his heirs and assigns, 3/8ths of all the oil and gas that may be produced from said land, and being a part of the royalty retained by us in the original lease to H. C. Lampkin and F. W. Dumraese, provided, however, there shall be paid to us the proceeds from 2/8ths of the part hereby conveyed, to be applied to the payment of said Ten Thousand Dollars ($10,000.00) indebtedness, said payments to be made if and when said oil is produced and sold and that when said 2/8ths of said oil has amounted to enough to pay said Ten Thousand Dollars ($10,000.00) without interest, then our only interest shall be a 1/8th royalty hereby reserved, but in this connection neither W. P. Ferguson nor his assigns are to be personally liable for any portion of said indebtedness.

"That said original lease from us to H. C. Lampkin and F. W. Dumraese provided, among other things, that the lessees were 'to deliver to the credit of lessor, free of cost in the pipe line to which they may connect said wells, the equal 4/8ths part of all oil saved and produced from said leased premises', and said lease is hereby reformed and amended so as to read that lessees are 'to deliver to the credit of lessor, free of cost, in the pipe line to which they may connect said wells, 1/8th part of all oil saved and produced from said leased premises', but in all other respects said lease remains unchanged."

Thereafter, by mesne conveyances, the plaintiff, Herbert S. Gray, acquired all the interest in the lease theretofore owned by W. P. Ferguson, and plaintiff took over the four wells then on the lease, and after expending several thousand dollars cleaning and rehabilitating them, with such success that by October, 1936, the $10,000 which Taylor and wife were to receive out of the proceeds under their said contract with W. P. Ferguson had been fully paid out of the 2/8ths of the royalty on the premises, in accordance with the terms of that contract, but the owners of the 1/16th interest theretofore reserved by Lampkin and Dumraese in their contract and deed to Harper and Jones did not contribute to any of that expense.

W. H. Taylor and wife acquired the 1/16th interest in the lease formerly owned by Lampkin, Dumraese and Donehoo on June 12th, 1937, without paying a money consideration therefor; and they acquired same with actual notice of the terms of the contract of Lampkin, Dumraese and Donehoo, of date February 21st, 1922, to pay plaintiff $100 per month for his services in operating the lease, upon the condition stated. But they did not agree to assume that obligation as a consideration for that deed. On the contrary, they immediately notified plaintiff that they would not be bound thereby.

After defendants acquired that 1/16th interest, plaintiff continued drilling operations for the period of time beginning with the first of June, 1937, and extending through the month of May, 1939, and expended therefor the sum of $7,603.77. The oil developed from the lease during that period was sold to the Continental Oil Company, and that company has withheld payment of $1,660.42 of the proceeds accruing from said 1/16th interest, to await a judicial determination of the respective claims of the parties thereto.

Plaintiff instituted this suit against defendants W. H. Taylor and wife, Mrs. Mary Ann Taylor, to establish a prior right to that fund.

In the first count of his petition, he alleged that prior to the time defendants acquired said 1/16th interest in the lease formerly owned by Lampkin and Dumraese, he, plaintiff, had operated the lease for 23½ months, under the contract of Lampkin, Dumraese and Donehoo, of date February 21st, 1922, and those parties had become indebted to him at the rate of $100 per month, aggregating $2,350. And that under the further provision in that contract, that the same would be paid "until such time as the parties thereto may mutually agree to vary or change the amount of said monthly payments", and the stipulation therein, "that the terms and conditions of this contract shall inure to the benefit of, and be binding upon the heirs, executors, administrators, and assigns, of the parties of the first part" (Lampkin, Dumraese and Donehoo), he was entitled to an equitable lien on said 1/16th interest in the lease for $2,350, and defendants took same subject thereto. Upon that theory plaintiff sought a recovery of the entire amount of the funds now impounded in the hands of the Continental Oil Company.

In the second count of his petition, he alleged that between the dates June 15th, 1937, and June 1st, 1939, the lease was operated as a mining partnership or tenancy in common and in such operation plaintiff had expended $8,277.49, of which amount defendants' interest is justly chargeable with $1,034.81, with $60 accrued interest thereon, aggregating $1,094.81, even though the contract of Lampkin, Dumraese and Donehoo, of date February 21st, 1922, to pay Harper and Jones the salary therein specified, be held unenforceable.

The case was tried without a jury, and the judgment rendered recites findings that the contract of date February 21st, 1922, wherein Lampkin, Dumraese and Donehoo agreed to pay Harper and Jones for their services in operating the lease, a salary of $100 per month, after completion of wells Nos. 3 and 4, is unenforceable as against the 1/16th interest acquired by defendants from said Lampkin, Dumraese and Donehoo, but that said interest is properly chargeable with 1/14th of the aggregate sum of $7,603.77, expended in the operation of the lease from June 1st, 1937, to June 1st, 1938; said charge amounting to $543.12. Plaintiff was then allowed a recovery of that amount out of the $1,660.42 impounded with the Continental Oil Company, and the balance of that sum was awarded to defendants. But that the judgment shall be without prejudice to establish a lien for operating expenses incurred after June 1st, 1939.

Plaintiff has appealed.

After Lampkin, Dumraese and Donehoo entered into their contract, of date February 21st, 1922, with Harper and Jones, for operating the lease, the latter took charge, and out of proceeds of operation, completed drilling wells Nos. 3 and 4, contracted for, thus leaving the remainder of the contract to pay the salary of $100, executory as to both parties. Appellee has cited authorities strongly indicating that the contract then became unenforceable, by reason of uncertainty, as held by the trial court, such as Williston on Contracts, pages 104, 123 and 131; Mayer v. McCreery, 119 N.Y. 434, 23 N.E. 1045; Pickrell v. Buckler, Tex.Civ. App., 293 S.W. 667, writ denied, 116 Tex. 567, 296 S.W. 1062; Cammack v. Rogers, 32 Tex.Civ.App. 125, 74 S.W. 945; and 10 Tex.Jur., sect. 101, p. 175, and decisions there cited. 6 R.C.L., pp. 643 to 647.

This announcement on page 131, Williston on Contracts, above cited, fairly reflects the holdings in the other authorities cited: "Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise."

And this from Boatright v. Steinite Radio Corporation, 10 Cir., 46 F.2d 385, 389: "Where an essential element of a contract is

reserved for future agreement of the parties, no legal obligation arises until such future agreement is concluded. * * * An executory contract to sell, which provides that the price shall be fixed by future agreement between the parties, is incomplete and non-enforceable until the parties agree on the price."

However, we deem it unnecessary to determine that point.

In the first place, the contract of Lampkin, Dumraese and Donehoo was not a covenant running with title. No lien was given to secure its performance, and since defendants did not assume it, but expressly notified plaintiff before the services were performed that they would not be bound by it, we fail to perceive on what principle defendants became personally liable therefor, or that the charge therefor could be fixed as an equitable lien on the lease, by virtue of the prior personal contract of Lampkin et al. to pay therefor. It is to be noted further that when defendants took over the 1/16th interest in the lease, Harper and Jones were dead.

Accordingly, all assignments of error are overruled, and the judgment is affirmed.

On Motion for Rehearing

In response to appellant's request, we shall attempt to further clarify our conclusions reached on original hearing.

The right to recover of Lampkin and Dumraese under their contract with Harper and Jones, the sum of $100 per month for drilling operations performed by plaintiff after he acquired 15/16ths interest in the entire leasehold estate, and the same right of recovery against Taylor and wife after they acquired the 1/16th interest in question from Lampkin and Dumraese, lies at the very foundation of plaintiff's claim of an equitable lien on the 1/16th interest in the leasehold estate as against Taylor and wife, assignees of Lampkin and Dumraese. The lien was claimed as an incident only of the contract of Lampkin and Dumraese with Harper and Jones. It must fail if the contract was not then enforceable against them. Even if Lampkin and Dumraese had owned that 1/16th interest at the time plaintiff incurred the expenses for operation of the lease, by reason of which he sought to establish an equitable lien on that interest—which ownership did not exist—their prior contract to contribute $100 per month towards operation expenses was not then enforceable against them for

lack of definiteness, because it was expressly stipulated in their contract with Harper and Jones that their obligation to pay the same would continue until "such time as the parties hereto may mutually agree to vary or change the amount of said monthly payment"; thus giving either party to the contract the option to terminate the agreement to contribute that sum towards drilling operations, at any time. 10 Tex.Jur., para. 101, page 175; para. 196, page 341; para. 198, page 344; para. 266, page 399; para. 213, page 377; para. 223, page 393. It was not enforceable against W. H. Taylor, the assignee of Lampkin and Dumraese, for the additional reasons, first, it was the personal contract of Lampkin and Dumraese to pay Harper and Jones expenses which the latter might incur and which the Taylors did not assume; second, it was not a covenant running with title; and third, Harper and Jones being then dead, it was impossible for them to mutually agree with Lampkin and Dumraese to a continuation of that executory contract to the time plaintiff incurred drilling expenses in question; in the absence of which Lampkin and Dumraese were not bound to such continuation, for that further reason. 10 Tex.Jur., para. 253, page 438; 38 Tex.Jur., para. 6, page 649; para. 34, page 695; para. 23, page 678; para. 28, page 687; para. 79, page 765; 12 Tex.Jur., para. 43, page 65.

It is to be noted further that plaintiff's suit, in the first count of his petition, was not for damages for breach of the personal contract of Lampkin and Dumraese to contribute $100 per month towards operating expenses, but was an action to fix a lien on the 1/16th interest in controversy, as an incident to the breach of that contract by Lampkin and Dumraese, on the theory that the contract was enforceable as against Lampkin and Dumraese, in the first instance, and as against W. H. Taylor and wife, their vendees, under a quitclaim deed, who bought with notice of the contract, but who did not assume it. Nor were Lampkin and Dumraese made defendants in the suit.

Moreover, in his motion for rehearing, appellant admits that the contract in question of Lampkin and Dumraese was not a covenant running with their title to the 1/16th interest in the leasehold estate, and also that he made no claim of personal liability of defendants for $100 per month for drilling expenses incurred by plaintiff; by reason of the prior contract of Lampkin and

Dumraese to pay expenses of that character which Harper and Jones might incur.

When plaintiff incurred the expenses for operation of the entire lease, he was a co-tenant with Taylor and wife, as assignees of Lampkin and Dumraese, and the 1/16th interest in the leasehold in question was therefore chargeable with an equitable lien for its pro rata portion of such expenses, by reason of such co-tenancy, independently of the contract of Lampkin and Dumraese in question, as prayed for in the second alternative count in plaintiff's petition; and that relief was decreed to plaintiff in the judgment rendered.

The motion for rehearing is overruled.