## McCURDY et al. v. HARRY L. EDWARDS DRILLING CO. et al.

### No. 11816.

Court of Civil Appeals of Texas. Galveston.

- Nov. 21, 1946.

E. G. Aycock and Wm. Pannill, both of Fort Worth, for appellants.

Maurice Epstein, of Houston, and Masterson & Pope, of Angleton, for appellee.

CODY, Justice.

This was a suit for the construction of two drilling contracts, for an accounting, and for the recovery of certain items claimed by plaintiffs, McCurdy and Johnson, to be due them from defendant, Harry L. Edwards Drilling Company, a corporation. The Gulf Oil Corporation was also a formal party defendant in the suit.

Plaintiffs were the owners of two Brazos River Bed leases in Lochridge Oil Field in Brazoria County in September 1937, and at that time entered into a drilling contract with defendant to drill a well on one of the leases. That contract was in the usual form, providing for a specified depth, at a specified cost per foot, etc. Then, on November 16, 1937, after the well had been drilled to a depth entitling defendant to approximately $40,000 under the contract, the parties superseded the aforesaid contract with two new contracts, under which a well was to be completed on each of said leases. Under this new arrangement the sole compensation that defendant was to receive for performance of its obligation was an undivided one-third interest in the mineral estates held by plaintiffs in virtue of said leases from the State, less an oil-payment reserved by plaintiffs out of said one-third interest

A well was completed as a producer on each lease by early February, 1938. And plaintiffs have operated said leases ever since. On August 31, 1945, (which was the accounting date used at the trial), the value of the production from the two leases exceeded $400,000. The amount of the oil-payment had been reduced from $67,019.35, to $4,248.94. However, over the period from April 1 to August 31, 1945, the operation costs exceeded the value of the production, marketed for same period, by $24,420.54.

It was the theory of plaintiffs' suit that the terms of the reservation of the oil-payment were such as to make the oil-payment bear interest at the legal rate. It was further the theory of their suit that defendant was personally liable to plaintiffs, who paid the $24,420.54 deficit, for one-third of said sum, and for interest thereon at the legal rate; and that plaintiffs were entitled also to a lien on defendant's interest in the leases, to enforce the payment thereof.

The court, without a jury, rendered a judgment which, so far as is now material, was to the effect:

I. That, by the terms of the drilling contracts, plaintiffs were entitled to reimbursement of the drilling costs, (which had been ascertained to be $67,019.35), out of the production from the interest conveyed by them to defendant. That such oil-payment did not bear interest. That, as of August 31, 1945, the oil-payment amounted to $4,248.94.

II. That "the parties by their subsequent letters, conduct and acts have so modified (their) original agreements" that one-third "of the costs of operating said leases chargeable to Harry L. Edwards Drilling Company is to be paid to Johnson & McCurdy from the ⅓ interest of Harry L.

Edwards Drilling Company in the oil produced from said leases without personal liability on the part of Harry L. Edwards Drilling Company and that said modification of said contract shall extend for the entire term of the leases."

III. That one-third of the operating costs which were unpaid on August 31, 1945, amounted to $8,140.18, and same were chargeable to defendant's one-third interest, but that said sum did not bear interest, and defendant was not personally liable therefor, and plaintiffs were not entitled to a lien on defendant's interest to enforce payment of said drilling costs.

IV. That this is an accounting case in which both sides have failed in part to sustain their position, and half of the court costs are adjudged against each side.

Both parties gave notice of appeal from portions of the judgment, but only plaintiffs have perfected an appeal. No conclusions of fact or law were requested or filed.

Plaintiffs predicate their appeal upon eight points, which, in substance, are:

I. The court erred in holding that the parties "by their subsequent letters, conduct and acts have so modified (their) original agreements" etc.

II. The court erred in admitting a letter dated June 6, 1938, from plaintiff McCurdy to Edwards, the president of defendant company, in evidence.

III. The court erred in overruling plaintiffs' exceptions to defendant's cross-action.

IV. The court erred in refusing to render a personal judgment against defendant for $8,140.18, being one-third of the deficit of operating costs, as of August 31, 1945.

V. The court erred in refusing to adjudge a lien on defendant's interest in the leases, to secure the payment of its said share of the deficit of the operating costs.

VI. The court erred in refusing to allow interest at the legal rate on defendant's share of the deficit of the operating costs.

VII. The court erred in refusing to allow interest on the drilling costs (i.e., $67,019.35, which is sometimes hereinabove referred to as the "oil-payment" reserved by plaintiffs in the interest transferred to defendant by them).

VIII. The court erred in adjudging half the court costs against plaintiffs.

The language used in the drilling contracts, to effect a transfer to defendant from plaintiffs of an undivided interest in the mineral estates, which had been conveyed by the leases to plaintiffs, was: "Owners do hereby assign, transfer and convey said one-third (⅓) interest unto contractor, its successors and assigns, but the title to same shall automatically vest in contractor when it completes its faithful performance of this contract and not before."

The drilling contracts provided that plaintiffs should pay the drilling costs to defendant, including the cost of the equipment for the wells, and provided a method for the ascertainment of the amount of said costs. The amount of said costs were ascertained to have been $67,019.35 at the completion of the performance under said contracts. It was provided that plaintiffs should be reimbursed for said drilling costs by an oil-payment reserved by plaintiffs out of the interest conveyed by them to defendant. The language used to effect such reservation of said oil-payment was as follows: "All of the oil and/or gas (including casinghead gas) belonging to aforesaid one-third (⅓) interest that will vest in contractor as hereinbefore provided shall be run to the credit of the owners and payments therefor be made to them until they are fully reimbursed for all moneys paid by them to contractor as hereinbefore stipulated, after which" the production from said undivided one-third interest shall belong to defendant or its assigns.

## Opinion.

■ As appears from the foregoing statement, the production from the interest in the leasehold, which was transferred to defendant, was by plaintiffs reserved to themselves until they were fully reimbursed for the drilling costs. The drilling contracts prescribed the method for establishing the amount of said drilling costs, and pursuant thereto the amount was established to be $67,019.35. This reservation of production to pay said sum was an

"oil-payment". See McLean v. State, Tex. Civ.App., 181 S.W.2d 725, writ refused. An oil-payment consists of "profit" to issue from the land and, in contemplation of law, is land. Id. An oil-payment is not a debt, nor interest bearing. The court properly refused to allow plaintiffs interest on the sum of $67,019.35, or any part of it. Point VII is overruled.

■ Plaintiffs alone operated the leases from the time the wells were completed. During the period from April 1, to August 31, 1945, plaintiffs incurred operating costs that exceeded the value of the production by $24,420.54 It was plaintiffs' contention that, under the evidence as a matter of law, plaintiffs and defendant were joint adventurers, so that defendant was personally liable to plaintiffs, as for money advanced in the joint adventure, for one-third thereof. We disagree with such contention. The evidence warranted, if it did not compel, the conclusion that the only privity between the parties, which existed after the completion of the wells, was a privity of estate in the leasehold. The leases were operated solely by plaintiffs. And under the evidence the court was at least warranted in concluding that, in operating the leases, plaintiffs were but exercising their rights as owners, or part owners, of the leasehold estate. Therefore there was no error in the court's refusal to render a personal judgment against defendant for any part of the costs incurred by plaintiffs from April 1 to August 31, 1945.

■ Stated briefly, plaintiffs must lose the costs in question, unless and until there is sufficient gross production from the leases to absorb them. The principle, upon which the participating co-tenant is allowed to deduct the reasonable expenses of producing and marketing oil from the gross production, is an equitable one. A court of equity will not permit the non-participating co-tenant to be unjustly enriched at the expense of the participating co-tenant. Consequently, the participating co-tenant is allowed to deduct the costs of production from the gross production, and is required to account to the non-participating co-tenant for only his share of the net production, measured by his interest in the land. See Burnham v. Hardy Oil Co., Tex. Civ.App., 147 S.W. 330.

■ The expenditure by plaintiffs of the costs in question was a speculation. If the speculation turns out well, and the production is restored, and the leases are preserved, the defendant will not be allowed to share in the production until after the costs in question have been deducted from the gross production. To do otherwise would be to allow defendant to be unjustly enriched at plaintiffs' expense. But plaintiffs must bear any loss from the speculation alone. Of course, if plaintiffs desired not to operate the leases, defendant would have the right to take over such operation. Defendant would have to account to plaintiffs for three-thirds of the net production until the oil payment was cleared. Plaintiffs' points IV, V, and VI are overruled.

Plaintiffs' points I, II and III are closely related. Plaintiffs' point I complains of that part of the judgment reading: "* * * that the parties by their subsequent letters, conduct and acts have so modified said original agreements hereinabove referred to so that one-third of the costs of operating said leases chargeable to Harry L. Edwards Drilling Company is to be paid to Johnson & McCurdy from the one-third interest of Harry L. Edwards Drilling Company in the oil produced from said leases without personal liability on the part of Harry L. Edwards Drilling Company and that said modification of said contract shall extend for the entire term of the operation of said leases."

The "original agreements," referred to by the court in that part of the judgment just quoted, could only have been the drilling contracts of November 16, 1937. There was nothing in the drilling contracts that related to operating the leases. And, even in the absence of the court's holding in that part of the judgment just quoted, those portions of the judgment complained of in plaintiffs' points IV, V, and VI, are fully supported, and, as we have held, are correct. So, assuming that the portion of the judgment complained of by plaintiffs' point I, was error, it was not reversible error. Plaintiffs' points II and III merely elaborate their contention that said portion

of the judgment was error. Points I, II and III do not present reversible error, and insofar as they are urged as presenting reversible error they are overruled.

▮ Point VIII complains of the court's judgment dividing the costs. The court gave upon the face of the record what he deemed good cause for adjudging half the costs against each party. Rule 141, Texas Rules of Civil Procedure, which is old Article 2066, Vernon's Anno.Tex. Stats., with minor textual changes, provides: "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." The rule vests in the court a sound judicial discretion to determine what is good cause for dividing the costs between the parties. Pendery v. Panhandle Refining Co., Tex.Civ.App., 169 S.W.2d 766, writ refused. No abuse of the court's discretion in adjudging the costs is made to appear. Point VIII is overruled.

The judgment is ordered affirmed.