ASHLAND OIL & REFINING COMPANY *v.* BOND.

5-187                                                263 S. W. 2d 74

Opinion delivered November 30, 1953.

Rehearing denied January 18, 1954.

*McKay, McKay & Anderson,* for appellant.

*Mahoney & Yocum,* for appellee.

GEORGE ROSE SMITH, J. This was originally an action at law brought by Durbin Bond to recover the sum of $12,737.85, alleged to be due to Bond as his share of the proceeds from the sale of oil produced from a well as to which Bond and the defendant, Ashland Oil & Refining Company, are colessees. The complaint asserts that Ashland, as the operating lessee, has wrongfully charged to Bond certain expenses incident to reworking the well. Ashland's principal defense is that Bond's share of these expenses should be deducted from his *pro rata* part of the income from the venture. The cause having been transferred to equity, trial resulted in a decree for Bond.

There is no dispute in the record concerning any material fact. In 1946 Bond owned an undivided one-fourth interest in this leasehold, and Ashland owned the other three-fourths. It was then suggested that the well be reworked, but Ashland took the position that the probability of success did not justify the expense that might well be involved in such an undertaking.

In 1948, however, the colessees decided to rework their well. Ashland sent to Bond a written instrument, referred to as an A. F. E., the material parts of which we copy:

"Authority For Expenditure

"Tulsa, Okla., March 2, 1948.          Auth. No. 198
"Authority is requested to pull tubing, cement off open hole 7406'-7410'. Test Cotton Valley section between 6900' and 7020' and reperforate Smackover higher in section.

"Requested by W. K. Lawrence, Approved by ......................
             "Detailed Estimate

[Here follows an itemized statement of the work to be done and its estimated cost, the estimates totaling $10,500.00.]

"Partnership Property

"Ashland Oil & Refining Company ..............¾—$7,875.00
"Durbin Bond .................................................¼—$2,625.00"

After Bond had approved and returned this A. F. E., the company began reworking the well in July, 1948. So many difficulties were encountered that Ashland ultimately spent $53,553.72 in the course of successfully obtaining the production of oil. Bond knew that the work was in progress; but the principal report that was furnished to him, on August 27, 1948, is so technical in its language that we are unable to say whether Bond should have known that the original limitation of $10,500 was being greatly exceeded. In the view we take, however, it is immaterial whether Bond had that knowledge.

In December of 1948, after the job of rehabilitating the well had been substantially completed, Bond still owed $2,026.38 upon his original commitment under the A. F. E. He tendered that amount in a letter to Ashland but stated that he considered the additional charges against him to be unauthorized. Ashland declined the tender, insisting that Bond was liable for one-fourth of the total outlay. In 1949 Ashland began purchasing the total production from this well and from another well owned by these parties, but as purchaser Ashland withheld payments to Bond until the amount due him exceeded the amount claimed by Ashland for expenses incurred in reworking the first well. When Ashland tendered, in November of 1949, what it considered to be Bond's first share in the profits, Bond refused the tender and filed this suit. The chancellor, in rejecting Ashland's main contention, quite properly credited against Ashland's liability the sum of $2,026.38 that was still due upon Bond's initial commitment under the A. F. E.

We think Ashland's position in the matter is sound. It is a rule well established and plainly just that when

one tenant in common has drilled a producing oil well upon the common property he must be given credit for his reasonable expenses upon being required to account to his cotenant for the oil withdrawn from the land. *Prairie Oil & Gas Co.* v. *Allen,* 8th Cir., 2 F. 2d 566, 40 A. L. R. 1389; *New Domain Oil & Gas Co.* v. *McKinney,* 188 Ky. 183, 221 S. W. 245; *Earp* v. *Mid-Continent Petroleum Corp.,* 167 Okla. 86, 27 P. 2d 855, 91 A. L. R. 188. Our decisions have recognized the same principle by their holding that a tenant in common who innocently cuts timber is liable only for its value "in the tree," *Paepcke-Leicht Lbr. Co.* v. *Collins,* 85 Ark. 414, 108 S. W. 511, a measure of damages that permits one to recoup the cost of felling the trees and cutting them into logs. *Burbridge* v. *Bradley Lbr. Co.,* 218 Ark. 897, 239 S. W. 2d 285.

The chancellor based his opinion primarily upon the fact that the A. F. E. limited Bond's estimated liability to $2,625. We do not régard the terms of the A. F. E. as being conclusive in the present dispute. It must be remembered that under the rule stated in the preceding paragraph Ashland would have been entitled to its reasonable expenses of production even if there had been no A. F. E. or other contract. The question is: Did the parties intend by the A. F. E. to substitute a different rule for that which would otherwise have been applied by law? Quite plainly they did not. Of course they were free to agree that even in the event of production Ashland should bear all costs not expressly assumed by Bond. But there is not a word in the A. F. E. to indicate that these parties meant to go to that extreme. The instrument is entitled "Authority For Expenditure"; by approving it Bond merely authorized Ashland to expend up to $2,625 on his behalf in reworking the well. It is obvious that the terms of the A. F. E. were intended to limit Bond's liability if the venture *failed* to result in a producing well. Aside from questions of estoppel, Ashland acted at its peril in exceeding the authorized limit of $10,500, and it is only because oil was found that Ashland is able to invoke the rule which

compels Bond to bear his share of the disbursements. Bond is certainly justified in insisting upon his right to participate in the profits; but there is neither a contractual basis nor an equitable basis for his contention that he should contribute only $2,625, leaving Ashland a burden of $50,928.72 as its reward for having assumed the risks of failure.

Later in his opinion the chancellor indicated that he did not find Ashland's expenditures to have been necessary. The trouble is that there is literally no evidence to the contrary. Ashland proved in detail the work that was done, and its cost. R. E. Adair, who supervised the reworking of the well, testified that an ordinarily prudent operator would have done the same work in similar circumstances. Bond offered no proof to rebut this *prima facie* showing. Rather to the contrary, the record includes much correspondence between the parties, but there is no intimation that the reasonableness of any item has ever been questioned.

It is argued that Ashland did not raise the theory of cotenancy in the trial court and cannot urge it here. We do not agree. The relationship between the parties was described in Bond's complaint and was admitted by Ashland's amended answer. In the latter pleading Ashland averred: "The plaintiff cannot in equity accept the benefits of the work and expenditures by the defendant without paying his proportionate part therefor." It was after this equitable defense had been interposed that the cause was transferred to chancery by agreement. Not only the pleadings but, as we have seen, the proof as well was directed to the issue now relied on by the appellant. The question is not raised here for the first time.

The cause must be remanded for the entry of a decree consistent with this opinion, but there is one matter that we do not intend for this opinion to foreclose. Ashland seems to have withheld Bond's returns from two different wells as an offset against expenditures made upon one well only. This dual withholding was erroneous, for Bond's *pro rata* responsibility for ex-

penses was not a personal liability that Ashland could have enforced by an action *in personam;* it was merely an offset against Bond's claim to income from the reworked well. Consequently whether Ashland now has a complete defense to the complaint depends upon whether Bond's one-fourth of the total production from the reworked well has yet equaled Ashland's claim **for** reimbursement.

Reversed and remanded.