**SHAW & ESTES et al., Appellants,**

v.

**TEXAS CONSOLIDATED OILS, a Corporation, Appellee.**

No. 13055.

Court of Civil Appeals of Texas.

Galveston.

Jan. 24, 1957.

On Motions for Rehearing Feb. 21, 1957.

Lee Shipp, Dallas, for appellants.

Jacque DeCoux and DeCoux & DeCoux, Houston; Garvin H. Germany, Jr., J. Edward Johnson and Renfro & Johnson, Dallas, for appellee.

GANNON, Justice.

Plaintiff, Texas Consolidated Oils, a corporation, brought this suit against Shaw & Estes, alleged to be a partnership composed of Gaylord Shaw and Burnett Estes, as well as against Burnett Estes individually, alleging itself to be a cotenant with the defendants, in two certain oil and gas leasehold estates in Harris County, Texas, to wit: The Levy "A" Lease and the Rothschild Lease; and with the defendant partnership Shaw & Estes in an additional lease in the same county known as the Tuffly Estate "A" Lease.

The petition sets out that since about April 1, 1950, plaintiff has operated said leases, incurring reasonable, proper and necessary expenses by reason thereof, which costs have inured to the benefit of defendants as its cotenants, not from the production of oil alone but as well because such production has operated to preserve the leasehold estates of all cotenants alike. It is further alleged that until shortly before the filing of the suit all the oil run from said leases has gone to the pipeline for the account of the several owners of the undivided interests in the leasehold estates, and that the proceeds of said pipeline sales have been distributed without any deduction for operating expenses to the respective owners of the undivided interests in said leasehold estates; that nevertheless defendants, each and both, while retaining said proceeds, have refused to account to or to reimburse plaintiff for their proper proportion and pro rata of expenses incurred in operating, and thereby preserving, said leases. No development costs are involved.

Plaintiff sought judgment against defendants for their respective proportions of such operating expenses or lifting costs so incurred by it, and asked for the establishment and foreclosure of equitable liens against the undivided interests of defendants in the leasehold estates, respectively, as security to plaintiff for reimbursement. Plaintiff had personal judgment against defendants, respectively, as for debt, with the establishment against the leasehold estates of its cotenants respectively of "cotenant's lien for expenses of operation and maintenance," with order of sale, etc. Defendants appeal.

The first point of error is that the court erred in rendering judgment at the second term of court after the expiration of the term at which the case was tried and submitted. We overrule the point.

Trial was commenced in the 129th District Court at the January-June 1955 term. This term ended with the Sunday next before the first Monday in July of 1955. The following term commenced with the first Monday of July, 1955, and ended with the Sunday next before the first Monday in January, 1956, when another January-June, 1956, term commenced. The following chronological statement reflecting the proceedings in the cause from the commencement of trial to the rendition of judgment, as set out in appellee's brief, is unchallenged and is adopted by us as a fair reflection of the record:

"(1) The cause came on for trial at the January-June Term [1955] and on June 13, 1955, before the Court, a jury being waived.

"(2) The oral testimony before the Court was concluded at 4:30 on June 14, 1955.

"(3) It was stipulated that Appellee would produce an audit report and that same would be accepted by Appellants as proof of the expenditures actually made against the lease involved herein.

"(4) The Court heard and approved such stipulation and continued the trial for further proceedings and directed the parties to submit written briefs within two weeks with reply briefs to follow within one week thereafter.

"(5) Said audit report was furnished and submitted to the Court on June 28, 1955, and a supplemental certificate in connection therewith was submitted on August 16, 1955, which was in the July-December 1955 Term.

"(6) The Court received Appellee's original brief on July 1, 1955, and Appellants' original brief on July 16, 1955, and Appellee's reply brief on August 24, 1955, and thereafter proceeded with consideration of said case. Thus, it is seen that a portion of the evidence and a part of the briefs were submitted to the Court during the July-December 1955 Term.

"(7) The Court announced on February 29, 1956, (during the January-June 1956 Term) that such cause was set for further hearing on March 28, 1956, at 10:00 A.M., and notified all parties to that effect, and upon such date [and without objection] the parties hereto appeared through their respective counsel and presented oral arguments. On the 28th day of March, 1956, the Court directed the submission of further written briefs and Appellee submitted, and the Court received, its supplemental brief on April 6, 1956, and the Appellants submitted, and the Court received, their brief in reply thereto on April 17, 1956.

"(8) Subsequent to the above sequence of events judgment was rendered and announced by the Court on May 2, 1956, and during the January-June 1956 Term."

Defendants rely upon the recent case of Coats v. Garrett, Tex.Civ.App., 283 S.W.2d 289, which opinion follows British General Fire Insurance Co. v. Ripy, Tex.Com. App., 130 Tex. 101, 106 S.W.2d 1047. The Ripy case expressly approves the holding of this Court in Rouff v. Boyd, Tex.Civ.App., 16 S.W.2d 403, 407, announcing the law as follows: "No rule of law is more firmly established in the jurisprudence of this state than that courts can only exercise their jurisdiction to hear and determine personal or property rights at the time and place fixed by the statute or rules of court authorized by the statutes. We do not think the rendition of the judgment in this case on December 18, 1928, during the third term of the court after the term at which the case was heard and submitted, was authorized by any statute or court rule. The only statute under which such authority is claimed by respondents is subdivision 28 of article 2092, Revised Statutes 1925, fixing rules of practice for district courts in counties having two or more district courts with only civil jurisdiction, the terms of which continue three months or longer. * * * This statute only authorizes the court to proceed with the trial and hearing of a case at the next term of the court when the term of court at which the trial began ends before the completion of the trial or hearing."

When Rouff v. Boyd was decided in 1929, Rule 66 for the district and county courts was in effect. That rule read:

" 'A cause that has been submitted for trial to the judge on the law and facts shall be determined and judgment rendered therein during the term at which it has been submitted, and at least two days before the end of the term, if it has been tried and submitted one day before that time, unless it is continued after such submission for trial, by the consent of the parties placed on the record, and in such event a statement of facts and bills of exception shall be prepared and filed upon a request in writing by either party.' "

Rule 66, of course, has been repealed and we find no express counterpart of it in the present court rules, but we do find the substantial counterpart of Art. 2092, Revised Statutes of 1925, in Rule 330(j), Texas Rules of Civil Procedure. That rule now provides: "If a case or other matter is on trial or in the process of hearing when the term of court expires, such trial, hear-

ing or other matter may be proceeded with at the next term of the court * * *." When we consider present Rule 330(j) laid against its historical background, namely the special practice Act, old Rule 66 for the government of trials in the district and county courts, and Art. 1923, R.S.1925, providing for extension of terms of court, we are convinced that under present Rule 330(j) the law is the same as announced in the Ripy case, namely, that generally speaking the rendition or entry of judgment subsequent to the expiration of the next term after the trial begins is, in the absence of an entry of an order extending the term, without authority of law.

■ But we do not think the law as announced in the cited cases applies to this record. Here, we have circumstances which did not obtain in any of the cases to which we have referred, namely, what was in effect the resubmission of the case by the implied consent of the parties at the January-June 1956 term. Here, at the second succeeding term after that at which the trial commenced, the parties reappeared pursuant to notice by the court and presented oral arguments based upon the evidence submitted at the two 1955 terms of the court. Additionally, pursuant to direction of the court and without objection, all parties submitted written briefs during the January-June 1956 term. The effect of these oral arguments and of the written briefs of the parties was, of course, to invoke the jurisdiction of the court at the 1956 term to render judgment in favor of the parties, respectively, so invoking the jurisdiction. This, we think, amounted to a resubmission of the case by agreement on the basis of the evidence theretofore developed and, as it were, to the commencement of a new trial at the January-June 1956 term. We are convinced, anything in Rule 330(j) to the contrary notwithstanding, that in contemplation of law, at least, under the particular facts of this record a new and a different trial was commenced at the January-June 1956 term. Judgment having been rendered at that term at the invocation

of the parties, we hardly see how any of them are in position to assert want of jurisdiction in the court to render the judgment appealed from. Had all of the evidence which was introduced at the two 1955 terms of the court been taken as formally reintroduced when the parties appeared before the court during the 1956 term, surely the parties would not be able to claim want of jurisdiction because a trial would have been commenced at the very term at which judgment was rendered. That, however, in our opinion, is the legal effect of what the parties did when, pursuant to due notice of the court, they appeared and invoked its jurisdiction to render judgment on the basis of the evidence submitted at the prior terms. We feel the present record is distinguishable from those upon which the Rouff, Ripy and Coats cases were decided, for in each of those cases judgment was entered after the next succeeding term at which the trial was commenced without the parties again appearing before the court and without any of the parties, either expressly or by implication, invoking the jurisdiction of the court to render judgment at such term.

■ See the Connecticut case of Whitaker v. Cannon Mills Co., 132 Conn. 434, 45 A.2d 120, 122, explaining that under the statute there involved, which is quite similar to our Rule 330(j), lack of jurisdiction to render judgment after expiration of the term next succeeding the term at which trial was commenced is not for want of jurisdiction of the subject matter but of the person, and hence may be waived. In that case it was held that a defendant who filed pleadings and participated in a further hearing after expiration of the time allowed by statute for rendering judgment waived the statute, and could not claim that judgment was invalid for lack of jurisdiction.

We quote the Connecticut court:

"In Spelke v. Shaw, 117 Conn. 639, 169 A. 787, we interpreted this statute as requiring that, where a term of court is divided into sessions, the judgment must be rendered at

the same session in which the case is tried or the next succeeding one, but we pointed out (117 Conn. at page 644, 169 A. at page 788) that, with the consent of the parties, express or implied, the court might decide the case at a later time; and in Ferguson v. Sabo, 115 Conn. 619, 623, 162 A. 844, we stated that the requirement of the statute *might be waived.* The lack of jurisdiction after the expiration of the time fixed does not pertain to the subject matter but to the parties. See Foley v. George A. Douglas & Bro., Inc., 121 Conn. 377, 380, 185 A. 70. From the correspondence between the trial judge and counsel for the defendant and from the fact that thereafter the defendant filed pleadings and participated in further hearings, the last as late as May 23, 1942, the trial court could properly find, as it did, that the defendant had waived the requirements of the statute." (Emphasis supplied.)

See also the text of 49 C.J.S., Judgments, § 113, page 241, stating: "It has been held that, where the parties expressly or impliedly consent, a judgment may be rendered after the expiration of the term; * * *."

■■■ After fully pleading all of the facts upon which it relied for a recovery, including the amount, necessity for, and reasonableness of the expenditures made by it for the benefit of the cotenancy, plaintiff attached a detailed statement of its accounts relating to the several leases, and as a matter of supererogation, as it were, also attached an affidavit in compliance with Rule 185, T.R.C.P., sufficient, if that rule be applicable to the present claims, to make the suit one upon a sworn account. Defendants complain that plaintiff's demands, claims, and causes of action were not of a character embraced within the terms of Rule 185. We agree. However, the record shows that the sworn account was not introduced in evidence or in any wise relied upon by plaintiff, or taken by the court, as proof of the justness of the claims. On the contrary, plaintiff introduced witnesses to testify to the reasonableness and necessity of the charges

for which it sought recoupment; and the parties stipulated that an audit might be taken by the court as proof of the expenditures actually having been made by plaintiff in the operation of the leases respectively. Further, by stipulation, the matter of the reasonableness of the expenditures was left to the court. We see no harm or prejudice merely from the state of the pleadings, and points of error addressed thereto are overruled.

Except for the dissallowance of certain items which we are unable to identify, the court rendered a personal judgment against defendants for sums chargeable against their respective leasehold interests on account of "operating expenses." The record shows that these "operating expenses" consisted in part, at least, of unsuccessful reworking operations on one of the wells which resulted only in the production of salt water, and which well has since been abandoned. A part of the charges for which appellee was granted recovery may or may not be an account of these unsuccessful reworking operations, which, of course, did not benefit or continue any leasehold estate of defendants. Then, too, the judgment in plaintiff's favor is for the sum total of all operating expenses chargeable against its cotenants, respectively, without separation of the expenses as between the three leases involved. Further, the judgment establishes and grants foreclosure of an equitable lien on *all of the leases* for *all* expenses incurred by plaintiff without regard to any particular lease in connection with the operation of which the expenses were incurred. Differently put, the plaintiff recovered money judgments against the defendants, respectively, for single sums representing operating expenses incurred by it in lifting the oil from all three leases, and all of such sums are made liens against *all three leases;* so that, for example, plaintiff winds up with an equitable lien against defendants' interests in the Levy lease for expenses incurred by it in operating the Rothschild and Tuffly leases.

In other jurisdictions, generally speaking, a cotenant's right of contribution does not entitle him to a personal judgment against his associates, but must be recouped in an adjustment of accounts or out of his cotenant's interest in the property or its proceeds. We quote 14 Amer.Jur., title Cotenancy, Sec. 43, Page 110:

"It is clear, of course, that in the absence of agreement a tenant in common has no personal claim for contribution against his associates. Any compensation or reimbursement must be made from his cotenants' interest in the property or its proceeds, or by deductions from claims against him on account of rents or profits or waste."

In some states, however, including Texas, it seems that the law will imply a contract on the part of one cotenant to reimburse his co-owner for moneys *necessarily and beneficially* spent for the benefit of the common estate. Stephenson v. Luttrell, 107 Tex. 320, 179 S.W. 260, 261. In that case it appeared that a cotenant had expended a substantial sum of money for the benefit of a lot, common property, in order to fill it to the grade of surrounding territory on Galveston Island so as to preserve its value and to keep it from becoming a complete loss and "a public nuisance, a menace to the life and health of the inhabitants of the city." The necessity for incurring the costs when they were incurred was in the nature of an emergency because at the time all territory surrounding the lot was being filled in according to a general plan; and " 'it could not have been filled later except at a cost entirely prohibitory, because greatly in excess of the value of the property after being filled.' " The costs incurred in filling the lot saved it " 'from becoming valueless and increased its value by a sum at least equal to the expense.' " The right of the cotenant incurring the expense to a personal judgment for reimbursement ratably by his associates was upheld by the Supreme Court. We quote explanatory parts of the opinion:

"The law implies a contract between him [a cotenant] and his cotenant, authorizing him to spend for him the money which was *necessarily* spent, but further than this there is no *implied contract*. The cause of action allowed in such cases is not grounded on benefits received, though this be considered an element necessary to recovery, for he would not be authorized in law to spend money for his cotenant for a useless and unnecessary improvement; but the cause is founded on reimbursement for money necessarily, or beneficially spent." With reference to money *necessarily and beneficially spent,* the court continues: " * * * the principle of contribution has no element of *speculation* in it. In cases of this kind it is implied that the person seeking contribution had authority from his cotenant to expend the money that was actually spent. It is the same as if he had been *actually instructed* by his cotenant to expend that much money for him in improving the lot. This much is implied by law." (Emphasis supplied.) Because the principle is so well known, it is unnecessary to cite authority for the proposition that a cotenant incurring *speculative* expense in connection with exploration and development of oil, gas, and mineral properties is not entitled to a personal judgment against his cotenant for reimbursement, but only to be reimbursed *out of production* if and when production results. We refer, of course, only to the rights of cotenants inter sese growing out of the relation only.

It appears from the authorities that there is a difference in the legal effects which flow in favor of one cotenant against another from money "necessarily or beneficially spent" and from money speculatively spent, regardless of the mere fact that such speculative expenditure may result in enhancement of the common estate. It seems to be established by the Texas authorities that for moneys spent by a cotenant "necessarily and beneficially" in the interest of the common estate, such cotenant has a right to be reimbursed proportionately by his associates, and that such right is to a personal judgment; and, also, that such

claims are entitled to the security of an equitable lien on the cotenants' interest *in the common estate*. The matter is different in the case of money speculatively spent in prospecting for and developing minerals for production. In such cases a cotenant incurring expense is entitled to reimbursement only out of the share of his associates *in actual production*.

■ In the present case it appears that the recoveries against the defendants respectively, for which the plaintiff was allowed the establishment and foreclosure of equitable liens, may embrace, in part at least, moneys spent in speculative efforts to preserve the common estate. It is plain that in law there is no implied promise or agreement on the part of a cotenant to reimburse for such expenditures if unsuccessful. It is also plain that such expenditures form no basis for the establishment of equitable liens on the interest of cotenants in the common estate.

■ The leases involved, each and all, had at all material times extended beyond their primary terms and were being kept alive and were subject to being kept alive *only by production*. Absent production, they would have ceased and determined. In the main, the expenditures made by plaintiff, for which it seeks reimbursement, were necessary and beneficial, i. e., *necessary* to preserve the common estate by production, and *beneficial* because they resulted in such preservation. We are satisfied that all such expenses necessarily incurred which were beneficial to a common estate by keeping it in existence through production entitle plaintiff to reimbursement personally by its cotenants, and, as well, that such right of recovery ought to be secured by an equitable lien. We are likewise satisfied, however, that this is not true in respect to so much of the expenditures as did not actually extend the leasehold estate, i. e., the reworking operations which were unsuccessful and resulted only in salt water and neither preserved the estate nor were beneficial to it. But we know of no theory under which expenses incurred by plaintiff in producing oil from any one lease can result in the establishment of an equitable lien upon defendants' leasehold interest in other and different leases. The case will have to be remanded to the trial court for proper determination in the light of these principles.

■ The record shows that plaintiff delivered to the pipeline all of the production up to and including a date certain for the benefit of the cotenancy, according to the proportionate interests, without insisting on its claim to a right in the proceeds from said production for reimbursement for expenses incurred in lifting and delivering the oil to the pipeline. It may or may not be possible or even desirable for plaintiff to segregate out of its entire expense so much of it as was incurred in producing the particular oil, the proceeds of which have gone to and been accepted by defendants and appropriated to their own benefit; however, in our view, when defendants accepted these proceeds and appropriated them to their own use and accepted the benefits of plaintiff's contribution to the common estate, there arose in law and in equity an implied contract upon the part of defendants to reimburse plaintiff for their proportionate part of all costs reasonably incurred in lifting and producing the very oil, the proceeds of which the defendants have accepted. Otherwise, the defendants would be unconscionably and unjustly enriched at the expense of plaintiff. We do not feel, as contended by defendants, that plaintiff's rights on this account would be limited to a charge on *future* production.

In arriving at the foregoing views, in addition to the authorities expressly cited, we have considered the following: Batson v. Coley & Wilson, Tex.Civ.App., 59 S.W.2d 445; Burnham v. Hardy Oil Co., Tex.Civ. App., 147 S.W. 330; Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125; White v. Smyth, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348; Willson v. Superior Oil Co., Tex.Civ.App., 274 S.W.2d 947; Wynn v. Flannegan, 25 Tex. 778; Eaton v. Ruther-

ford, Tex.Civ.App., 163 S.W.2d 247; Estes v. Texas Consolidated Oils, Tex.Civ.App., 266 S.W.2d 272; Gray v. Taylor, Tex.Civ. App., 138 S.W.2d 891; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347; Johnston v. Johnston, Tex.Civ.App., 204 S.W. 469; Putty v. Putty, Tex.Civ.App., 6 S.W.2d 136; Schluter v. Sell, Tex.Civ.App., 194 S.W.2d 125; Lach v. Weber, 123 N.J.Eq. 303, 197 A. 417; McCurdy v. Harriy L. Edwards Drilling Co., Tex.Civ.App., 198 S.W.2d 609; Ashland Oil & Refining Co. v. Bond, 222 Ark. 696, 263 S.W.2d 74; 86 C.J.S., Tenancy in Common, § 68, Subsections a and f; 14 Amer.Jur., title Cotenancy, Sec. 43, page 109; 11 Tex.Jur., Sec. 37, page 458; 28 Tex. Jur., Sec. 9, pages 12–13.

Reversed and remanded.

CODY, J., not sitting.

## On Motions for Rehearing

GANNON, Justice.

All parties have filed motions for rehearing.

■ The motion of appellee, Texas Consolidated Oils, takes exception to the opinion of the Court only in so far as the cause is reversed and remanded. Error is confessed in so much of the judgment of the court below as fixes and establishes and forecloses an equitable lien against all of the leasehold estates involved for the total expenses incurred in operating all of the several leases, and admits that appellee is entitled to equitable liens against the several leases respectively only for expenses incurred in operating each particular lease. Further, appellee has demonstrated to our satisfaction from the record that all speculative expense included in the judgment which did not result in production and in prolonging the life of the leases may be separated from such expenses of operation as did result in production and prolonging the lives of the leases, and has offered to remit all items in the recovery which might

possibly represent in whole or in part speculative expenses, said remittiturs totaling $39.52. Appellee, accordingly, prays that we set aside our former judgment reversing and remanding the cause to the trial court, and that we here modify and reform the judgment in accordance with the views expressed in our opinion on original submission. We have concluded that appellee's motion is meritorious and that it should be granted.

Our former judgment is, therefore, set aside and the judgment of the trial court is reformed and modified, as follows: Appellee's total money recovery against appellant, Shaw & Estes, jointly and severally, is reduced to the sum of $2,001.99 with interest thereon at the rate of 6% per annum from May 2, 1956, until paid. Appellee's money recovery against Burnett Estes individually is reduced to the sum of $1,443.08 together with interest thereon at the rate of 6% per annum from May 2, 1956, until paid. Appellee's cotenant's liens for expenses of operation and maintenance against the several leases to secure its money recovery against Shaw & Estes, jointly and severally, are hereby fixed and established, as follows: against the Levy A. Lease to secure the sum of $862.26 of its recovery against Shaw & Estes, jointly and severally; against the Rothschild Lease to secure the sum of $580.82 of its recovery against Shaw & Estes, jointly and severally; against the Tuffly A Lease to secure the sum of $558.91 of its recovery against Shaw & Estes, jointly and severally. Appellee's cotenant's liens for expenses of operation and maintenance against the several leases to secure its money recovery against Burnett Estes, individually, are hereby fixed and established, as follows: against the Levy A. Lease to secure the sum of $862.26 of its recovery against Burnett Estes, individually; against the Rothschild Lease to secure the sum of $580.82 of its recovery against Burnett Estes, individually.

We have carefully considered the able motion for rehearing of appellants, but find it without merit and it is refused.

Former judgment set aside; judgment of the trial court modified and reformed, and as modified and reformed, affirmed; motion for rehearing of appellants refused.

CODY, J., not sitting.